60 P.3d 106 (2002)
114 Wash.App. 611
Laura V. RENZ, a single woman, Appellant,
v.
SPOKANE EYE CLINIC, P.S., d/b/a Spokane Optical Center, and Kenneth Sweatt and Jane Doe Sweatt, husband and wife, Respondents.
No. 20679-3-III.
Court of Appeals of Washington, Division 3, Panel Nine.
December 19, 2002.
*107 David J. Carlson, Spokane, for Appellant.
James B. King, Christopher J. Kerley, Keefe, King & Bowman, Stephen R. Matthews, Phillabaum, Ledlin, Matthews & Gaffney-Brown, Spokane, for Respondents.
SWEENEY, J.
Both federal and state law prohibit an employer from discharging an employee for complaining about illegal conduct, including sexual harassment. 42 U.S.C.A. § 2000e-2 (West 1994); RCW 49.60.180. Laura V. Renz complained about her boss's offensive sexually laden remarks. Viewing the evidence in a light most favorable to Ms. Renz, she was then reevaluated and fired. The dispositive question here is whether she made an adequate showing that the Spokane Eye Clinic's proffered nondiscriminatory reasons for discharging her were pretextual. We conclude that her showing is sufficient to submit the question to a jury. And we therefore reverse the summary dismissal of her complaint.

FACTS
The court dismissed Ms. Renz's complaint on the employer's motion for summary judgment.
*108 We view the factual backdrop for this case then in a light most favorable to the nonmoving party, Ms. Renz. Ultimately a jury may, or may not, accept this version of what happened and why.
Ms. Renz had been a licensed optician since 1990. She went to work for the Spokane Eye Clinic on March 24, 1997, subject to a 90-day probationary period. Kenneth Sweatt managed the Clinic and supervised Ms. Renz. At some point before her probation expired, Mr. Sweatt told Ms. Renz that she was doing well and would be a full-time employee on her 90-day anniversary.
But in June, Mr. Sweatt made a comment to Ms. Renz about "eating his banana." Clerk's Papers (CP) at 70. She took the comment as a sexual innuendo. On June 24 (her three-month anniversary), Mr. Sweatt told Ms. Renz that "everything was great." And they would be "keeping [her]." CP at 70. She then received benefits including medical and dental insurance. The Clinic also paid her for her birthday (June 30) as a paid holiday and paid for the Fourth of July holidayboth benefits available only to full-time employees.
In late June, Ms. Renz was fixing her hair in a back room. Mr. Sweatt asked what she was doing. Ms. Renz responded "getting pretty" because she had a dinner date with her boyfriend. CP at 70, 77. Mr. Sweatt said to "be sure to use protection." CP at 70.
Ms. Renz mentioned the comment to LeRoy Kunz, a long-time employee of the Clinic. Mr. Kunz responded that Mr. Sweatt had made similar comments to other women and suggested that Ms. Renz complain about it. Immediately after this conversation, Mr. Sweatt walked out from behind some nearby shelving. He apparently overheard the conversation between Ms. Renz and Mr. Kunz. On July 7, Mr. Sweatt told Ms. Renz that her probationary period would be extended for 30 days.
On July 10, Ms. Renz attended a customer service seminar. Mr. Sweatt asked her to prepare a report on the seminar. He then criticized the report because it was handwritten and of unsatisfactory quality.
On July 14, Ms. Renz was working with customers. She knelt down to get something from a cabinet. Mr. Sweatt approached and said, "on your knees again? Didn't you spend most of your weekend that way?" CP at 72, 77. Two customers were nearby. One laughed. The other appeared embarrassed. Ms. Renz reported the comment to Rosemary O'Leary, the Clinic's Human Resource Manager. Ms. O'Leary said Ms. Renz would have to report in writing. Ms. Renz was hesitant. But Ms. O'Leary said a report would not affect her job.
On July 15, Ms. Renz complained to Ms. O'Leary in writing about Mr. Sweatt's comments. The Clinic reported the complaint to Mr. Sweatt that same day. The Clinic immediately instructed Mr. Sweatt to have no further contact with Ms. Renz.
Within a day of filing the complaint, Mr. Sweatt sent Ms. Renz to two other Clinic locations in Spokane for a week's evaluation by others. Both submitted negative evaluations during the last days of Ms. Renz's employment.
On August 1, the Clinic terminated Ms. Renz:
On July 1, 1997[[1]] you were presented with written notice that your probationary period was being extended 30 days. This extension was necessary to further evaluate your performance in the following areas: customer service, listening skills, problem solving complaints with customers and determining patient's needs.
Your skills have been independently evaluated by Ken Sweatt, Barb Schultz, and Joe Tierney. They have determined that you have not made sufficient progress in these areas to warrant offering you continued employment. Please accept this communication as written notice that your *109 employment is being terminated effective today.
CP at 78.

PROCEDURAL HISTORY
Ms. Renz sued Mr. Sweatt and the Clinic for: (1) discrimination, retaliatory discharge; (2) breach of contract; (3) breach of implied covenant of good faith and fair dealing; (4) wrongful discharge; and (5) intentional infliction of emotional distress.
The court permitted Ms. Renz to amend her complaint to add a cause of action for hostile work environment based on sexual harassment.
In a series of summary judgment orders, the court dismissed her complaint. She effectively appeals the dismissal of her claim for retaliatory discharge only. See RAP 10.3(g); Goehle v. Fred Hutchinson Cancer Research Ctr., 100 Wash.App. 609, 620, 1 P.3d 579 (2000) (appellate court will not consider an issue that the appellant has failed to assign as error).

DISCUSSION
RETALIATORY DISCHARGE CLAIM
We review a summary dismissal de novo. Hubbard v. Spokane County, 146 Wash.2d 699, 706, 50 P.3d 602 (2002) (citing Ellis v. City of Seattle, 142 Wash.2d 450, 458, 13 P.3d 1065 (2000)). "`Summary judgment is appropriate if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.'" Id. at 707, 50 P.3d 602 (quoting Ellis, 142 Wash.2d at 458, 13 P.3d 1065). A material fact is one upon which the outcome of the litigation depends. Greater Harbor 2000 v. City of Seattle, 132 Wash.2d 267, 279, 937 P.2d 1082 (1997).
We look at the evidence and reasonable inferences in the light most favorable to the nonmoving party. Hubbard, 146 Wash.2d at 707, 50 P.3d 602 (citing Ellis, 142 Wash.2d at 458, 13 P.3d 1065). Summary judgment should only be granted "`if, from all the evidence, reasonable persons could reach but one conclusion.'" Id. (quoting Ellis, 142 Wash.2d at 458, 13 P.3d 1065).
Supervisors may be held liable as individuals for employment discrimination that violates Washington law. Brown v. Scott Paper Worldwide Co., 143 Wash.2d 349, 361-62, 20 P.3d 921 (2001). This includes retaliation claims.
Retaliation. Sexual harassment is prohibited by statute in this state. RCW 49.60.180(3); Glasgow v. Georgia-Pacific Corp., 103 Wash.2d 401, 405, 693 P.2d 708 (1985); Kahn v. Salerno, 90 Wash.App. 110, 117-18, 951 P.2d 321 (1998). RCW 49.60.210(1) provides:
It is an unfair practice for any employer... to discharge, expel, or otherwise discriminate against any person because he or she has opposed any practices forbidden by this chapter, or because he or she has filed a charge, testified, or assisted in any proceeding under this chapter.
The Clinic, therefore, unlawfully discriminated if it fired Ms. Renz because she complained about sexual harassment.
Shifting Burdens of Proof. The analytical framework is found in both federal and state case law. McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973) as later clarified in Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000), and finally adopted in Washington by Hill v. BCTI Income Fund-I, 144 Wash.2d 172, 185-87, 23 P.3d 440 (2001).
First, the employee must make out a prima facie case of retaliation. Milligan v. Thompson, 110 Wash.App. 628, 638, 42 P.3d 418 (2002). This establishes a rebuttable presumption of discrimination. The evidentiary burden then shifts to the employer to produce admissible evidence of a legitimate, nondiscriminatory, nonretaliatory reason for the discharge. Grimwood v. Univ. of Puget Sound, Inc., 110 Wash.2d 355, 363-64, 753 P.2d 517 (1988). Significantly, this is merely a burden of production, not a burden of persuasion. Id. at 364, 753 P.2d 517. If the employer fails to meet this burden, then the employee is entitled to an order establishing liability as a matter of law. Kastanis v. Educ. Employees Credit Union, 122 Wash.2d *110 483, 490, 859 P.2d 26, 865 P.2d 507 (1993) (citing Tex. Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 254, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981)).
But if the employer produces some evidence of a nondiscriminatory reason for the discharge, the temporary presumption of retaliatory discharge established by the prima facie evidence is rebutted and removed. Hill, 144 Wash.2d at 182, 23 P.3d 440. Once the presumption is removed, the burden shifts back to the employee. The employee must then create a genuine issue of material fact by showing that the employer's stated reason for the adverse employment action was a pretext for what was a discriminatory or retaliatory purpose. Grimwood, 110 Wash.2d at 364, 753 P.2d 517. An employee can demonstrate that the reasons given by the employer are not worthy of belief with evidence that: (1) the reasons have no basis in fact, or (2) even if based in fact, the employer was not motivated by these reasons, or (3) the reasons are insufficient to motivate an adverse employment decision. Chen v. State, 86 Wash.App. 183, 190, 937 P.2d 612 (1997). If the employee fails to do this, the employer is entitled to dismissal as a matter of law. Kastanis, 122 Wash.2d at 491, 859 P.2d 26; Grimwood, 110 Wash.2d at 365, 753 P.2d 517.
Prima Facie Showing. The Clinic and Mr. Sweatt argue that Mr. Sweatt's conduct, even if inappropriate, was not so offensive or pervasive so as to be illegal. But their argument misses the point. It is not necessary that the conduct complained of actually be unlawful. "`[A]n employee who opposes employment practices reasonably believed to be discriminatory is protected by the "opposition clause" whether or not the practice is actually discriminatory.'" Graves v. Dep't of Game, 76 Wash.App. 705, 712, 887 P.2d 424 (1994) (quoting Gifford v. Atchison, Topeka & Santa Fe Ry., 685 F.2d 1149, 1157 (9th Cir.1982)). Thus, whether Ms. Renz can prove that her belief was well founded (i.e., that the Clinic actually engaged in sexual harassment) is not dispositive of the viability of her retaliatory discharge claim. Rather, she need only demonstrate that her belief was reasonable under the circumstances.[2]
The Clinic agrees that the conduct complained of by Ms. Renz need not actually be unlawful. Clark County Sch. Dist. v. Breeden, 532 U.S. 268, 121 S.Ct. 1508, 149 L.Ed.2d 509 (2001). The Clinic argues, nonetheless, that Ms. Renz must have a reasonable, good faith belief that Mr. Sweatt's conduct constituted sexual harassment. And because no one could reasonably believe Mr. Sweatt's conduct was unlawful (like in Breeden), summary judgment is appropriate.
In Breeden, a male supervisor reviewed a job applicant's psychological evaluation reports in the presence of one male and one female employee who were also participating in the review. The male supervisor read that the applicant had once commented to a coworker, "`I hear making love to you is like making love to the Grand Canyon.'" Breeden, 532 U.S. at 269, 121 S.Ct. 1508. He read the comment aloud to the others, looked at the female employee and stated, "`I don't know what that means.'" Id. The male employee responded, "`Well, I'll tell you later,'" and both men chuckled. Id.
When the woman sued for sexual harassment, the Court ultimately determined that the supervisor's comment and response were "at worst an `isolated inciden[t]' that cannot remotely be considered `extremely serious,' *111 as our cases require." Id. at 271, 121 S.Ct. 1508 (quoting Faragher v. Boca Raton, 524 U.S. 775, 788, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998)).
Breeden is distinguishable. Here, there was more than one incident. Mr. Sweatt made three separate comments over a period of less than one month. Mr. Sweatt began his comments having known Ms. Renz for only three months. Ms. Renz considered the comments objectionable. And in the context presented, they were. The personal nature of the comments escalated from the banana to "use protection" to "on your knees." CP at 70, 72, 77. Likewise, the public nature of the delivery escalated from an audience of a single coworker to comments in front of customers.
The employee's complaint must, however, result in an adverse employment action. Here, Ms. Renz was firedthe ultimate adverse employment action. See Kahn, 90 Wash.App. at 129, 951 P.2d 321 (where the parties agree that the employee was terminated, the element has been met).
On this record, a reasonable jury could conclude that Ms. Renz was treated differently after her formal complaint. Her supervisor was no longer available to her in any manner. Prior to her complaint, Ms. Renz was based in the Southside Clinic. Mr. Sweatt's office was in the Southside Clinic. After her complaint, she was transferred to the other Clinics. Whether that was a consequence of the Clinic's decision to keep Mr. Sweatt and Ms. Renz from having contact or instead punishment is for a jury to decide, not us. Ms. Renz was effectively exiled for the last two weeks of her employment. CP at 44.
Finally, Ms. Renz's termination notice suggests that her termination was due, in part, to Mr. Sweatt's evaluation.
A retaliatory motive need not be the employer's sole or principal reason for the discharge so long as the employee establishes that retaliation was a substantial factor. Wilmot v. Kaiser Aluminum & Chem. Corp., 118 Wash.2d 46, 68-69, 821 P.2d 18 (1991); Kahn v. Salerno, 90 Wash.App. 110, 128-29, 951 P.2d 321 (1998). A factor supporting the decision is "substantial" if it so much as tips the scales one way or the other. Rowe v. Vaagen Bros. Lumber, Inc., 100 Wash.App. 268, 277, 996 P.2d 1103 (2000).
Employers, of course, rarely openly reveal that retaliation was a motive for adverse employment actions. Employees must then necessarily resort to circumstantial evidence to demonstrate the retaliatory purpose. Kahn, 90 Wash.App. at 130, 951 P.2d 321 (citing Wilmot, 118 Wash.2d at 69, 821 P.2d 18). An employee can meet this prong by establishing that he or she participated in an opposition activity, the employer knew of the opposition activity, and the employer discharged him or her. Id. at 131, 951 P.2d 321 (citing Wilmot, 118 Wash.2d at 69, 821 P.2d 18). That showing has been made here.
Again, viewed in a light most favorable to Ms. Renz, unsatisfactory work evaluations followed once she was overheard making a complaint of sexual harassment. She can then make the following circumstantial case: (1) her extended probation followed Mr. Sweatt overhearing her complaint about him; (2) the period between her complaint and her termination was brief; and (3) her evaluation and treatment changed after these events.
Employer's Burden of Proof. Ms. Renz maintains that once she had established her prima facie case, the trial court should not have dismissed her action. But she is mistaken. The burden simply shifts to the employer. If the employer advances a non-discriminatory reason for the discharge, the burden then shifts back to the plaintiff, who must then show that the reason advanced is pretextual.
In Hill v. BCTI Income Fund-I, our Supreme Court held that in circumstantially-based discrimination claims brought under state law, a McDonnell Douglas prima facie case, plus evidence sufficient to disbelieve the employer's explanation, will ordinarily suffice to survive summary judgment. Hill v. BCTI Income Fund-I, 144 Wash.2d 172, 185, 23 P.3d 440 (2001). But if all burdens have been met and there are competing reasonable inferences, both discriminatory and nondiscriminatory, *112 then a jury must decide the question. Id. at 186, 23 P.3d 440.
The Clinic argues that Ms. Renz did not produce evidence sufficient to create an issue of disputed material fact as to the Clinic's reasons for discharge. The Clinic also asserts Ms. Renz's claim is weak; she complained of just a single event regarding Mr. Sweatt. And the Clinic directed that Mr. Sweatt have no further contact with her. They argue that it was only after performance deficiencies were noted did Ms. Renz complain of two additional comments by Mr. Sweatt. The Clinic points out that Ms. Renz's performance was evaluated by two managers who had no knowledge of her complaints against Mr. Sweatt. And both recommended against offering Ms. Renz permanent employment.
But, again, the burdens here are burdens of production, not burdens of persuasion. Carle v. McChord Credit Union, 65 Wash.App. 93, 98-102, 827 P.2d 1070 (1992). Appellate courts are not suited for, and therefore not in the business of, weighing and balancing competing evidence. See, e.g., No Ka Oi Corp. v. Nat'l 60 Minute Tune, Inc., 71 Wash.App. 844, 854 n. 11, 863 P.2d 79 (1993) ("[I]t is axiomatic that on a motion for summary judgment the trial court has no authority to weigh evidence or testimonial credibility, nor may we do so on appeal."). Our job is to pass upon whether a burden of production has been met, not whether the evidence produced is persuasive. That is the jury's role, once a burden of production has been met.
In its letter of termination, the Clinic states that Ms. Renz's probation was extended on July 1, 1997, due to its need to reevaluate Ms. Renz in certain areas including "customer service, listening skills, problem solving complaints with customers and determining patient's needs." CP at 78. Mr. Sweatt, Ms. Schultz, and Mr. Tierney evaluated Ms. Renz. The Clinic then concluded that she had "not made sufficient progress in these areas to warrant offering [her] continued employment." CP at 78. And the employer argues that she was supposed to learn how to solder, but did not.
Employee's Burden to Show Pretext. The burden then shifted to Ms. Renz to give reasons why the employer's articulated reason for the discharge was unworthy of belief. Chen v. State, 86 Wash.App. 183, 190, 937 P.2d 612 (1997); Kuyper v. Dep't of Wildlife, 79 Wash.App. 732, 738, 904 P.2d 793 (1995).
She is not required to produce "direct or `smoking gun' evidence." Chen, 86 Wash.App. at 190, 937 P.2d 612 (citing Sellsted v. Wash. Mut. Sav. Bank, 69 Wash.App. 852, 860, 851 P.2d 716 (1993)). Rather, "[c]ircumstantial, indirect, and inference evidence is sufficient to discharge the plaintiff's burden." Id. (citing Sellsted, 69 Wash.App. at 860, 851 P.2d 716). Multiple, incompatible reasons may support an inference that none of the reasons given is the real reason. Sellsted, 69 Wash.App. at 861, 851 P.2d 716.
Conflicting reasons or evidence rebutting their accuracy or believability are sufficient to create competing inferences. Id. at 862-63, 851 P.2d 716. Such inconsistencies cannot be resolved at the summary judgment stage. Id. at 861, 851 P.2d 716 (citing Chipollini v. Spencer Gifts, Inc., 814 F.2d 893, 900-01 (3d Cir.) (en banc) (1987)).
The Clinic's claim that Ms. Renz had customer service problems is rebutted from testimony from Jaycee Vessar. Ms. Vessar worked with Mr. Tierney at the Clinic's Northside location. She worked with Ms. Renz and observed Ms. Renz with customers. Some customers asked for Ms. Renz by name. Mr. Tierney praised Ms. Renz's work. Shortly after Ms. Renz was terminated, Ms. Vessar talked about Ms. Renz's situation with other coworkers. One of the ophthalmologists overheard their conversation and told them that they should not be talking about that matter. And they might be fired if they continued to do so.
Of note to us is the time between Ms. Renz's initial complaints (overheard by Mr. Sweatt) and the start of her documented shortcomings. Up to that point there are no complaints about her work. Her 90-day probationary period passed uneventfully. She received paid holidays like permanent employees. She had a favorable conversation with Mr. Sweatt about her permanent status.
*113 Complaints about soldering and the customer service seminar only followed this first incident.
The seminar report upset Mr. Sweatt. But there is no explanation why she had to write the report in the first place. The same can be said for her failure to learn to solder. The question is why. Did Ms. Renz fail to show up for soldering class or simply and flatly refuse to learn the skill? Soldering was discussed at the 90-day review, apparently on July 7, 1997. CP at 40. Ms. Renz testified that Mr. Sweatt discussed soldering; that she did not know how to do it and that she needed to learn. CP at 40. But why and how? There were only three weeks remaining in her tenure.
Finally, Ms. Renz's probationary period was not extended until July 7after she finished her probation. Her probationary status ended on June 24. Ms. Renz received permanent employee benefits starting on June 30. The extension was after she was overheard making her first complaint. Also the Clinic did not (apparently) document any of Ms. Renz's shortcomings until it decided to fire her.
In sum, there is cumulative evidence to support a reasonable inference of pretext. Carle, 65 Wash.App. at 104, 827 P.2d 1070. When there are reasonable inferences of both discriminatory and nondiscriminatory reasons for discharge, the choice is one for a jury. Id. (citing United States v. Stanley, 928 F.2d 575, 577 (2d Cir.1991)).

CONCLUSION
We reverse the summary dismissal of Ms. Renz's complaint for retaliatory discharge.
KATO, A.C.J., and KURTZ, J., concur.
NOTES
[1] Evidence suggests and the Clinic admits that the probation was not extended until July 7, 1997. Respondent Clinic's Br. at 2.
[2] Ellis, 142 Wash.2d at 460-61, 13 P.3d 1065 (holding that an employee is not required to prove an actual industrial safety violation to establish a retaliation claim under RCW 49.17.160(1); rather, employee need only prove that City terminated him for making a complaint); see also Gifford, 685 F.2d at 1157, quoted with approval in Graves, 76 Wash.App. at 712, 887 P.2d 424 ("[A]n employee who opposes employment practices reasonably believed to be discriminatory is protected by the `opposition clause' whether or not the practice is actually discriminatory."). But see Blackford v. Battelle Mem'l Inst., 57 F.Supp.2d 1095, 1099 (E.D.Wash.1999) (to establish a prima facie violation of RCW 49.60.210, the employee must first offer evidence indicating that the employer arguably discriminated against someone in violation of Washington's law against discrimination (quoting Kahn, 90 Wash.App. at 130, 951 P.2d 321) ("Kahn need not prove that her complaints were to behavior that would violate the law against discrimination; but her opposition must be to conduct that is at least arguably a violation of the law.")).