97 P.3d 39 (2004)
123 Wn.App 116
Paula HUDON, Appellant,
v.
WEST VALLEY SCHOOL DISTRICT NO. 208, Respondent.
No. 22410-4-III.
Court of Appeals of Washington, Division 3, Panel Eight.
September 2, 2004.
*41 Sarah Lynn Clarke Wixson, Velikanje, Moore & Shore, PS, Yakima, WA, for Appellant.
Jeanie R. Tolcacher, Attorney at Law, Yakima, WA, for Respondent.
SWEENEY, A.C.J.
This is an equal pay act dispute. A school district paid its female director of child nutrition services less than its male director of maintenance for equal work. This despite the fact that both had received equal pay for 10 years. The district concedes equal work and disparate pay. But it argues that its salary decisions were based on a statistical survey of salaries which satisfies the "factor other than sex" exception to the equal pay act. We disagree with the trial court's conclusion that no disputed material facts preclude summary judgment. First, Ms. Hudon disputes whether the survey was even used as a basis for compensating the male supervisor. Second, even if it was, disputed material facts remain over whether the survey is a valid, gender-neutral basis for setting salaries. We therefore reverse the summary dismissal of the plaintiff's claims.

FACTS
Paula Hudon's complaint was dismissed on summary judgment. We consider the evidence, then, in a light most favorable to her. Wingert v. Yellow Freight Sys., Inc., 146 Wash.2d 841, 847, 50 P.3d 256 (2002).
Ms. Hudon became the Director of Child Nutrition for Yakima Valley's West Valley School District No. 208 (District) in 1986. The District also employed directors of maintenance and transportation, both men. Dave Ferring was the Director of Maintenance. Ed Zier was the Director of Transportation. All three directors were paid at the same rate for 10 years. That was $37,856 per year in 1996. That year, the District increased Mr. Ferring's pay to $46,500. Neither Ms. Hudon nor Mr. Zier received a raise. Mr. Ferring's salary increase followed his threat to leave the District and take a higher paying position as maintenance director with the larger Wenatchee school district.
Ms. Hudon began a futile campaign for a matching raise.
The School Information and Research Service Survey (SIRS) is an annual statewide salary survey published by the Washington Association of School Administrators. The District denied all Ms. Hudon's salary requests because SIRS indicated that her salary was competitive with that of food services supervisors in comparably sized districts. But SIRS also showed that the 1996 average rate for maintenance supervisors was $41,122 in the District's category, and $41,496 in the category including Wenatchee. Yet the District paid Mr. Ferring $46,500. During this time, federally mandated nutrition programs were increasing Ms. Hudon's duties. She argued that the position of district child nutrition director was not comparable to school food service manager or supervisor listed in SIRS.
Over the next few years, the disparity between the salaries of Ms. Hudon and Mr. Ferring increased. Mr. Zier's compensation also gradually increased relative to Ms. Hudon's. By 2000  01, Mr. Ferring was getting $51,480 per year, Mr. Zier $48,464, and *42 Ms. Hudon $45,677.[1] For 2001  02, Mr. Ferring and Mr. Zier each received raises of 3.7 percent, to $53,385 and $50,257, respectively. Ms. Hudon's raise was 1.7 percent, to $46,454. The men also had more paid nonworking days.
Ms. Hudon met with West Valley School District Board members Irene Glessner and Mike Saunders at various times during 2002 and 2003 to compare her responsibilities and staff support with those of nutrition directors in neighboring school districts and with those of maintenance and transportation supervisors. Mr. Saunders told her if she was not satisfied she should look for another job. In addition to SIRS, the District told Ms. Hudon that she made less because of budgetary constraints; that Mr. Ferring made more because of an anticipated increase in enrollment; and that Mr. Ferring's raise was prompted by his threat to leave. Ms. Hudon continued to press the issue. She tried unsuccessfully to meet with the West Valley School District Board. Her supervisor, Gary Platt, warned Ms. Hudon not to get "too pushy." Clerk's Papers (CP) at 96. Mr. Platt later communicated his serious reservations about the relative worth of child nutrition compared to maintenance.
Ms. Hudon filed a claim against the District in December 1999. She filed her complaint in April 2001, alleging violation of the equal pay act, RCW 49.12.175.
Ms. Hudon received an unfavorable evaluation for 2000  01. Mr. Platt noted that her oral and written communication with the District staff, administration, and school board needed improvement. She also received a formal reprimand for insubordination. Because of these poor evaluations, when the board adopted a merit-based system of compensation in 2001, Ms. Hudon's 2001  02 raise was less than half that received by Mr. Ferring and Mr. Zier. Mr. Platt was replaced by Dr. Esperanza Lemos, followed by Dave Curry. Ms. Hudon received favorable evaluations from both.
The final amended complaint alleged unequal pay for equal work in violation of Washington's equal pay act (RCW 49.12.175); a claim of disparate impact under RCW 49.60.180(3) (discrimination on the basis of sex an unfair labor practice); and retaliation in violation of RCW 49.60.210(1) (retaliation against people who assert discrimination claims prohibited).
The District moved for summary judgment. For the purposes of the motion, the District admitted Ms. Hudon's prima facie equal pay act case  that the work of the three directors was equal and the pay was different. The District raised the affirmative statutory defense that the pay disparity was based on a factor other than sex: namely, the SIRS survey. The District denied retaliation and asserted that Ms. Hudon's negative reviews and reprimands reflected her insubordinate behavior, communication difficulties, failure to attend required meetings, and her history of communication difficulties.
The superior court concluded there were no disputed material facts and summarily dismissed Ms. Hudon's claims.

DISCUSSION
Ms. Hudon contends that questions of fact remain as to whether the District proved that the wage differential was based on a factor other than sex.
The District responds that it used SIRS to set Ms. Hudon's compensation competitively with those of neighboring districts. It does not claim to have done this with respect to Mr. Ferring's compensation. The District focuses instead on SIRS as a "factor other than sex" exception to the equal pay act. By alleging the pay disparity was justified by SIRS, the District contends it shifted the burden to Ms. Hudon to disprove this, as in a Title VII[2] claim. See, e.g., Ellingson v. Spokane Mortgage Co., 19 Wash.App. 48, 54-55, 573 P.2d 389 (1978), applying Washington's counterpart to Title VII. She did not do this. And so, the District contends, the trial court *43 correctly dismissed her claims as a matter of law.
The District also contends that "market forces" constitute a factor other than sex. "Unequal wages that reflect market conditions of supply and demand are not prohibited...." Stanley v. Univ. of S. Calif., 13 F.3d 1313, 1322 (9th Cir.1994). Again, the District contends that Ms. Hudon failed to show that SIRS did not serve a legitimate business purpose. The District cites Winkes v. Brown University for the proposition that giving Mr. Ferring a raise when he threatened to leave is not an equal pay act violation. Winkes v. Brown Univ., 747 F.2d 792 (1st Cir.1984). Winkes involved meeting a bona fide outside offer.
Finally, the District contends that Ed Zier, the Director of Transportation, also was paid less than Mr. Ferring. This, the District contends, defeats Ms. Hudon's argument that the differential between herself and Mr. Ferring constituted intentional discrimination.

STANDARD OF REVIEW
We ask the same question here as the trial court. Wingert v. Yellow Freight Sys., Inc., 146 Wash.2d 841, 847, 50 P.3d 256 (2002). Summary dismissal is appropriate only when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. CR 56(c); Wingert, 146 Wash.2d at 847, 50 P.3d 256. We view the facts and reasonable inferences from those facts in the light most favorable to the nonmoving party  here, Ms. Hudon. Id. Interpretation and application of the various statutory and common law causes of action are questions of law which we review de novo. Id.

EQUAL PAY ACT
Washington's equal pay act, RCW 49.12.175, is virtually identical to its federal counterpart, 29 U.S.C. § 206(d). Decisions interpreting the federal act may then be helpful. Oliver v. Pac. N.W. Bell Tel. Co., 106 Wash.2d 675, 678, 724 P.2d 1003 (1986); Adams v. Univ. of Wash., 106 Wash.2d 312, 317, 722 P.2d 74 (1986). The act is broadly remedial. And we construe it to fulfill the underlying purpose of the legislature, which was to sweep away outmoded inequities and assure women equal pay for equal work. Corning Glass Works v. Brennan, 417 U.S. 188, 208, 94 S.Ct. 2223, 41 L.Ed.2d 1 (1974).
A plaintiff states a prima facie case under the equal pay act by proving that men and women received different pay for equal work. Adams, 106 Wash.2d at 318, 722 P.2d 74. Here, the District concedes for the purpose of these proceedings that Ms. Hudon made out a prima facie case.
Once the prima facie case is established, the burden shifts to the employer to prove that the wage differential is justified under a statutory exception. Id. at 319, 722 P.2d 74 (citing Corning Glass, 417 U.S. at 196-97, 94 S.Ct. 2223). In Washington, the sole defense is that the wage disparity is "based in good faith on a factor or factors other than sex." RCW 49.12.175; Hemmings v. Tidyman's Inc., 285 F.3d 1174 (9th Cir.2002), cert. denied, 537 U.S. 1110, 123 S.Ct. 854, 154 L.Ed.2d 781 (2003). This is an affirmative defense which the employer must plead and prove. Kouba v. Allstate Ins. Co., 691 F.2d 873, 875 (9th Cir.1982). And whether the employer relied on a factor other than sex is usually a question of fact. Hein v. Or. Coll. of Educ., 718 F.2d 910, 913 (9th Cir.1983); Equal Employment Opportunity Comm'n v. Maricopa County Cmty. Coll. Dist., 736 F.2d 510, 513-14 (9th Cir.1984).
The record supports Ms. Hudon's contention that the District did not rely on SIRS to set Mr. Ferring's salary. Board member Irene Glessner testified in deposition:
Q. Well, you didn't consider the SIRS report with Dave Ferring when he came in and wanted the raise did you?
A. Oh, heck no. That was a panic thing.
CP at 207. And the District conceded as much at the hearing on its motion to dismiss. Report of Proceedings (RP) at 5.
Moreover, we cannot discern from the record precisely how SIRS was used to set salaries in this District. The sole SIRS excerpt in the record is for maintenance supervisors. *44 CP at 198, 200. For schools in the District's enrollment-size category (2,000  4,999), salaries range from $30,987 in Prosser to $61,328 in Spokane's West Valley, with a mean of $41,122. The range for the Wenatchee district's size category (5,000  9,999) was $32,595 to $53,689 with a mean of $45,220. Wenatchee itself paid $41,496. Mr. Ferring's 1996 raise put him at $46,500. CP at 93. This was higher than the mean of the districts with twice the enrollment.
Board Member Glessner testified that the District would not have matched its salaries to those of Wenatchee, because bigger districts pay more. But the excerpt of SIRS in our record does not bear this out. The highest paid maintenance supervisor in the District's category made 14 percent more than the highest paid maintenance supervisor in the larger district group, and 48 percent more than Wenatchee's.
The record does not include the SIRS pay range and mean for child nutrition supervisors. We cannot determine, therefore, whether SIRS justifies Ms. Hudon's salary any better than it does Mr. Ferring's. If anything, it appears that the SIRS salary range was even greater for nutrition supervisors. See RP at 7: "[Ms. Hudon] makes the statement there is less of a variance within their pay scales. That may be true." "Their" seems to refer to maintenance and transportation as compared with nutrition. Whether and how SIRS was used to determine the compensation of Ms. Hudon and Mr. Ferring is, then, a disputed material fact upon which the District will have the burden of proof at trial. Adams, 106 Wash.2d at 319, 722 P.2d 74.
Ms. Hudon next contends that SIRS is only superficially a factor other than sex. Her argument is that SIRS simply lists job titles and pay rates by district. And by doing so, it embodies and perpetuates historic discrimination against traditionally female-dominated job classifications  here child nutritionist.
Market forces may justify pay disparity, as the District contends. But there must be some legitimate business reason other than sex. In Kouba v. Allstate, newly hired sales employees received a safety net base rate based in part on their prior salary, resulting in generally lower wages for women. 691 F.2d at 874-75. The court ruled this was not prohibited as a matter of law and remanded for fact finding on whether some legitimate business reason supported the practice. Id. at 877-78. For example, the motivational effect of the minimum wage as an alternative to a commission scheme could be lost if it were substantially higher than the prior salary. Id. at 877-78. But the market forces argument does not meet the employer's burden of proof that the factor was "other than sex," absent some business reason for using the factor. Id. at 876.
In Adams v. University of Washington, computer technology rendered obsolete the hot-metal type setting skills of journeyman printers and put their employers at a commercial disadvantage. The university print shop retained its journeyman printers at journeyman wages, but created a new class of "computer typists" who were paid considerably less. Males and females in each group were paid the same. Adams, 106 Wash.2d at 314-15, 722 P.2d 74. Both groups did the same work. Virtually all type setting is now computerized. And one of the new-hires sued. The court ruled that the university's motive of protecting the journeymen from serious pay cuts while avoiding problems with the union constituted a legitimate business reason for the dual classification. Id. at 315, 722 P.2d 74. Again, standing alone, the classification was illegal.
American Federation of State, County, & Municipal Employees (AFSCME) v. State of Washington, cited by the District, is distinguishable. Am. Fed'n of State, County, & Mun. Employees, AFL-CIO (AFSCME) v. State of Wash., 770 F.2d 1401 (9th Cir.1985). First, it is a Title VII case, not equal pay act. Second, the issue was equal work. The court held that "comparable worth"  work that is dissimilar in responsibilities and skills but considered equally valuable to society  is not the same as "equal work." Id. at 1403-04. Moreover, the compensation system under review in that case was based on "surveys, agency hearings, administrative recommendations, budget proposals, executive actions, and legislative enactments." Id. at 1406. *45 Here, the District relies entirely on SIRS. And SIRS is simply a compilation of going rates.
Stanley v. University of Southern California is also distinguishable. There, the issue was whether the jobs of male and female athletic coaches were equal. Stanley, 13 F.3d at 1321. The court held that employers "may reward professional experience and education without violating the [Equal Pay Act]." Id. at 1322. Here, the District does not claim to reward Mr. Ferring's greater professional experience and education. And on this record there is no basis to do so.
The employer must, then, not only articulate a business purpose served by the factor, but must also show that it reasonably relied on the factor to achieve this purpose. Kouba, 691 F.2d at 876. SIRS is such a factor. The District has not articulated a rational policy served by using the SIRS statistics. The District here selectively withheld raises from people who had been on the job and receiving equal pay for 10 years. Any legitimate business purpose for this would be for the jury to decide. Hein, 718 F.2d at 913; Maricopa County, 736 F.2d at 513-14.
A factor selectively applied, as SIRS, would be discriminatory. The market forces question here is also complicated because the factor relied on can easily be used to capitalize on historically low salaries for women. And a discriminatory factor may be facially neutral. Here, the trial court concluded that Ms. Hudon's claim of pay discrimination based on sex failed as a matter of law because a male child nutritionist might receive the same salary.[3] This contravenes the equal pay act. Kouba, 691 F.2d at 876.
The pay disparity cannot be justified by the District's additional explanations that Ms. Hudon did not get a raise because of budgetary constraints and that Mr. Ferring did get one because of an anticipated rise in enrollment. But budget restrictions and higher enrollment would affect the two positions equally and therefore not be a defense.
Nor do we find the explanation that Mr. Ferring received a raise because he threatened to leave compelling, at least on these facts. No Washington case has ruled on this defense. But the defense was rejected in Winkes v. Brown University.[4] In Winkes, a university raised the salary of a female associate art history professor above that of a male associate professor in the same department in order to match a bona fide outside offer. The court rejected the market forces defense, because the university presented no evidence of the market for art history professors, did little research, and undertook no negotiations before meeting the outside offer. Winkes v. Brown Univ., 32 Fair Empl. Prac. Cas. (BNA) 1041, 1046-47 (D.R.I.1983), rev'd on other grounds, 747 F.2d 792 (1st Cir.1984). The District took the same approach to Mr. Ferring's salary request here.
Also, in Brock v. Georgia Southwestern College, male professors were paid more than female professors for equal work. Brock v. Ga. S.W. Coll., 765 F.2d 1026 (11th Cir.1985). The court rejected for insufficient evidence the employer's defense that higher wages for the male professors were dictated by their higher market value. Underpaying women simply because the market will bear it, the court held, is not allowed. Id. at 1037; Horner v. Mary Inst., 613 F.2d 706, 714 (8th Cir.1980). This is precisely the sort of disparity that Congress passed the equal pay act to correct. Futran v. Ring Radio Co., 501 F.Supp. 734, 739 (N.D.Ga.1980).
Here, the District produced no evidence of any bona fide outside offer to Mr. Ferring. It did not counter Ms. Hudon's showing that, not only was there no offer, but Mr. Ferring never even applied for a job in Wenatchee. The District did no research. And of course it did not consult its copy of the SIRS report. The decision to raise Mr. Ferring's salary was a "panic thing." CP at 207.
Whether it acted in good faith in persisting with SIRS after Ms. Hudon brought its shortcomings to the District's attention goes to the issue of intent. The District is correct *46 that good faith is not material at this stage, because the plaintiff need not prove intentional sex discrimination. The defendant must show job-related factors or some legitimate business reason for the disparity. If it proves neither, the fact that the defendant erroneously believed otherwise is immaterial. Good faith is not at issue on summary judgment. RCW 49.12.175.

TITLE VII
Ms. Hudon amended her complaint to include a Title VII disparate impact discrimination claim. This claim presumes that the District did, in fact, rely on SIRS in deciding to give its supervisors different pay for the same work.
It is unlawful for an employer to classify employees in a way that adversely affects any employee because of that individual's sex. Griggs v. Duke Power Co., 401 U.S. 424, 91 S.Ct. 849, 28 L.Ed.2d 158 (1971). As with an equal pay act claim, disparate impact does not require the plaintiff to prove discriminatory intent. It can follow a facially neutral practice that adversely affects one group more than another. Int'l Bhd. of Teamsters v. United States, 431 U.S. 324, 335 n. 15, 97 S.Ct. 1843, 52 L.Ed.2d 396 (1977); Oliver v. Pac. N.W. Bell Tel. Co., 106 Wash.2d 675, 679, 724 P.2d 1003 (1986).
A facially neutral practice in this context is one that is based on objective, nondiscretionary criteria. Oliver, 106 Wash.2d at 680, 724 P.2d 1003. The practice complained of should also be narrowly defined. AFSCME, 770 F.2d at 1406 (disparate impact model is ill-suited to wide-ranging challenges to general compensation policies which lend themselves better to disparate treatment analysis).
No one here tried to show that SIRS was based on objective, nondiscretionary criteria. And, more importantly, Ms. Hudon complains about the District's general compensation policies. A disparate impact analysis is then not appropriate.

RETALIATION
"It is an unfair practice for any employer ... to ... discriminate against any person because he or she has opposed any practices forbidden by this chapter." RCW 49.60.210(1). Ms. Hudon contends she was unfairly disciplined for continuing to agitate for fair treatment.
Again, we review summary dismissal of a retaliation claim de novo. Ellis v. City of Seattle, 142 Wash.2d 450, 458, 13 P.3d 1065 (2000); Renz v. Spokane Eye Clinic, 114 Wash.App. 611, 617, 60 P.3d 106 (2002). Summary judgment is appropriate only when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law, viewing all evidence and inferences reasonably to be drawn from it in the light most favorable to the nonmoving party. Renz, 114 Wash.App. at 617, 60 P.3d 106. The claim should not be dismissed unless reasonable persons could reach but one conclusion from the evidence. Id.
To make out a prima facie case of retaliation, the plaintiff must prove (1) a statutorily protected activity, (2) an adverse employment action, and (3) a causal link between the activity and the adverse action. McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-05, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973) (applying Title VII to race discrimination); Pedreyra v. Cornell Prescription Pharmacies, Inc., 465 F.Supp. 936, 947-48 (D.Colo.1979) (applying McDonnell Douglas to retaliation claims under the equal pay act).
Renz sets out the order of proof. First, the employee's prima facie case establishes a rebuttable presumption of discrimination. The evidentiary burden then shifts to the employer to produce admissible evidence of a plausible nonretaliatory reason for the adverse action. Renz, 114 Wash.App. at 618, 60 P.3d 106 (citing Grimwood v. Univ. of Puget Sound, Inc., 110 Wash.2d 355, 363-64, 753 P.2d 517 (1988)). This is a burden of production, not a burden of persuasion. Renz, 114 Wash.App. at 618, 60 P.3d 106; Tex. Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 254, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). Production of a plausible reason shifts the burden back to the plaintiff to persuade the fact finder the reason is pretextual. Summary judgment should not be granted where there are conflicting reasons *47 or contrary evidence sufficient to create competing inferences. Renz, 114 Wash.App. at 624, 60 P.3d 106.
Ms. Hudon made a prima facie case. She engaged in a statutorily protected activity  asserting her right to equal pay. She subsequently received a poor evaluation which she claims contributed to the perpetuation of the pay disparity. At issue is the causal link. And this is a question of fact. Hubbard v. Spokane County, 146 Wash.2d 699, 718, 50 P.3d 602 (2002).
Ms. Hudon's refusal to back down from her demands kept her at odds with Mr. Platt. See, e.g., CP at 55-56. Ms. Hudon also produced evidence that, after Mr. Platt was replaced as her supervisor, her new supervisor rejected Mr. Platt's proposed evaluation, finding it unjustified. CP at 99. This was sufficient to defeat summary judgment.
Disputed material facts preclude summary judgment on both the equal pay act claim and the retaliation claim. The judgment of the superior court is reversed.
WE CONCUR: KURTZ and BROWN, JJ.
NOTES
[1] For meaningful comparison, all pay amounts are presented as annual salaries. Given that the 1996 annual rate of $37,856 was $18.20 per hour, we converted hourly rates to annual salaries by multiplying by 2080 (37,856 divided by 18.20).
[2] 42 U.S.C. § 2000e.
[3] See Court's Oral Ruling, RP at 48.
[4] Winkes v. Brown Univ., 32 Fair Empl. Prac. Cas. (BNA) 1041 (D.R.I.1983), rev'd on other grounds, 747 F.2d 792 (1st Cir.1984).