IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| VIKTORIYA I. CHERVILOVA and MARTIN M. MARKOV, individually and as husband and wife,<br><br>          Appellants,<br><br>          v.<br><br>OVERLAKE OBSTETRICIANS AND GYNECOLOGISTS, PC, an active Washington corporation,<br><br>          Defendant,<br><br>INCYTE PATHOLOGY, PS, aka INCYTE PATHOLOGY, INC., an active Washington corporation; and INCYTE PATHOLOGY PROFESSIONAL, PS, a merged Washington corporation,<br><br>          Respondents. | No. 85197-7-I<br><br>DIVISION ONE<br><br><br><br>PUBLISHED OPINION |

BOWMAN, J. — Viktoriya Chervilova sued Incyte Pathology PS, also known as Incyte Pathology Inc., and Incyte Pathology Professional PS (collectively Incyte), alleging misdiagnosis of her cancerous mass as benign. The trial court determined Chervilova's out-of-state expert was not qualified to render an opinion on the standard of care in Washington and granted summary judgment for Incyte. Because the expert's testimony amounts to a prima facie showing that he is familiar with the standard of care for pathologists in Washington, we reverse and remand for further proceedings.

FACTS

In 2013, an MRI[1] showed a mass on Chervilova's uterus. She underwent a hysterectomy at the Overlake Medical Center Obstetrics and Gynecology Clinic. A pathology report from Incyte declared that the mass was benign and Chervilova's doctor advised her that she did not need any follow-up care.

In May 2021, Chervilova began feeling severe abdominal pain. A scan of her abdomen and pelvis revealed several masses. Chervilova underwent a laparotomy to remove the masses. Pathology of those masses revealed they were endometrial stromal sarcoma, a form of cancer. Further testing of the 2013 specimen confirmed the diagnosis.

Chervilova and her husband sued Incyte for medical negligence, alleging it misdiagnosed the mass removed during the 2013 hysterectomy.[2] In February 2023, Incyte moved for summary judgment. It argued that Chervilova had no admissible expert testimony in support of her negligence claim.

Chervilova opposed the motion for summary judgment. She retained Dr. Alexander Chirkov, a pathologist licensed in Rhode Island, New York, and Massachusetts, who submitted a declaration in support of her claim. Dr. Chirkov's declaration provides that he knows Washington State "defines the standard of care" as " 'that degree of care, skill and learning expected of a reasonably prudent health care provider at that time in the profession or class to

---

[1] Magnetic resonance imaging.

[2] Chervilova also sued Overlake Obstetricians and Gynecologists PS. Overlake moved for summary judgment dismissal, which the trial court granted. That order is not at issue in this appeal.

which he or she belongs, in the state of Washington, acting in the same or similar circumstance.' " *See* RCW 7.70.040(1)(a). And he is "familiar with the applicable standard of care for a pathologist interpreting and reporting on histological slides in the state of Washington." He explains Washington follows the national standard of care. He knows this to be true because

> the training and education of pathologists across the United States is intentionally and methodically standardized, with the intent of training pathologists to interpret and report on histological samples in a uniform and consistent way across the country.

From participating in professional organizations and continuing medical education programs and reading updated pathology literature, Dr. Chirkov says that he has "never seen or heard any suggestion . . . that the basic standards of reasonable prudence for a pathologist differ from state to state or are different in Washington than . . . any other state." And Dr. Chirkov concludes that Incyte's 2013 pathology report and several incorrect "critical findings" were "misleading and below the standard of care."

In March 2023, the trial court granted Incyte's motion for summary judgment. It concluded that as an out-of-state expert, Dr. Chirkov's declaration was inadequate to show that he is familiar with the standard of care in Washington, so he was not qualified to render an opinion in Chervilova's case. Chervilova moved for reconsideration, which the court denied.

Chervilova appeals.

## ANALYSIS

Chervilova argues that the trial court erred by rejecting Dr. Chirkov's opinion and granting summary judgment for Incyte. We agree.

3

We review a court's grant of summary judgment de novo. *Hill v. Sacred Heart Med. Ctr.*, 143 Wn. App. 438, 445, 177 P.3d 1152 (2008). We also review de novo whether sufficient evidence qualifies an expert's opinion. *Id.* at 445-46. Summary judgment for a defendant is appropriate if the plaintiff fails to produce sufficient believable evidence supporting the essential elements of her claim. *Id.*

The defendant bears the initial burden of showing that the plaintiff lacks competent evidence to support an essential element of her case. *Boyer v. Morimoto*, 10 Wn. App. 2d 506, 519, 449 P.3d 285 (2019). A defendant moving for summary judgment in a medical malpractice case can meet this burden by showing that a plaintiff lacks competent expert testimony that the defendant violated the applicable standard of care in Washington. *Young v. Key Pharms., Inc.*, 112 Wn.2d 216, 226-27, 770 P.2d 182 (1989). The burden then shifts to the plaintiff to produce a declaration from a qualified expert witness alleging specific facts establishing a cause of action. *See Id.* (citing CR 56(c)).

An expert must be qualified to express an opinion on the applicable standard of care. *Boyer*, 10 Wn. App. 2d at 519. Whether an expert is qualified to render an opinion is a preliminary finding of fact under ER 104(a). *Id.* at 521. The party offering the testimony must make a prima facie showing that their expert is qualified to render an opinion on the standard of care. *Id.* at 519-20. An expert's opinion must be based on more than conjecture or speculation. *Winkler v. Giddings*, 146 Wn. App. 387, 393, 190 P.3d 117 (2008). On summary judgment, this is a burden of production, not persuasion. *Renz v. Spokane Eye Clinic, P.S.*, 114 Wn. App. 611, 622-23, 60 P.3d 106 (2002). We view the

evidence and any inferences that may be drawn from that evidence in a light most favorable to the nonmoving party. *Hill*, 143 Wn. App. at 445.

To prove medical negligence, a plaintiff must show that the health care provider "failed to exercise that degree of care, skill, and learning expected of a reasonably prudent health care provider at that time in the profession or class to which he or she belongs, in the state of Washington, acting in the same or similar circumstances," and that "[s]uch failure was a proximate cause of the injury complained of." RCW 7.70.040(1). To determine whether an expert is qualified to render an opinion on medical negligence, we generally examine the record to determine the relevant specialty and whether the expert and the defendant practice in the same field. *Boyer*, 10 Wn. App. 2d at 521. If the expert does not practice in Washington, we also look to see if that expert is familiar with the Washington standard of care. *Id.* One way an out-of-state expert may establish familiarity with the Washington standard of care is to provide admissible testimony that a national standard of care exists in this state and that the defendant physician violated the national standard of care. *Id.*; *Driggs v. Howlett*, 193 Wn. App. 875, 898-99, 371 P.3d 61 (2016).

Here, Dr. Chirkov's declaration provides that from his training, education, and experience, he knows Washington pathologists follow a national standard of care. Dr. Chirkov explains:

> I can state that the Washington standard follows the national standards because I know that the training and education of pathologists across the United States is intentionally and methodically standardized, with the intent of training pathologists to interpret and report on histological samples in a uniform and consistent way across the country.

5

Dr. Chirkov says that the Liaison Committee on Medical Education (LCME) and national Accreditation Counsel of Graduate Medical Education (ACGME) "requires every [medical education] program to meet established standards." And

> most states (including Washington and the states I am licensed in: New York, Massachusetts, and Rhode Island) require applicants for a medical license to have graduated from an LCME accredited medical school . . . and successfully completed a United States residency program accredited by the ACGME.

Because of those requirements, Dr. Chirkov explains that "virtually all practicing anatomic and clinical pathologists in the United States . . . were all taught the same basic standards of reasonable prudence."

Dr. Chirkov also explains that "standards of practice are normalized across the country through national . . . specialized professional organizations," including the United States and Canadian Academy of Pathology (USCAP). He says that he is a member of USCAP and subscribes to its "two major peer-reviewed pathology journals." He states:

> USCAP, its journals, its published practice guidelines, and its continuing medical education programs help pathologists across the United States and North America keep up on the latest developments in the medicine and evolving standards of care.

Further, Dr. Chirkov explains that he regularly attends continuing medical education programs, which have an "overarching national accrediting organization" that "helps ensure a national uniformity of basic standards of reasonable prudence" for pathologists. According to Dr. Chirkov, he has

> never seen or heard any suggestion from any USCAP publications or presentations, or any other continuing medical education [he

6

has] participated in, that the basic standards of reasonable prudence for a pathologist differ from state to state or are different in Washington than in Rhode Island, New York, Massachusetts, or any other state.

Dr. Chirkov concludes that the content of Incyte's 2013 report and its incorrect critical findings did not amount to an "exercise of reasonable prudence" and were not "consistent with the applicable standard of care" for pathologists.

Viewing Dr. Chirkov's testimony in the light most favorable to Chervilova, he makes a prima facie showing that he is familiar with the national standard of care for pathologists; that based on his training, education, and experience, he knows Washington pathologists follow the national standard of care; and that Incyte violated that standard.

Incyte argues that *Boyer* compels a different result. In that case, the plaintiff experienced toxic shock syndrome after Dr. Kai Morimoto performed several cosmetic surgical procedures on her. *Boyer*, 10 Wn. App. 2d at 510-12. She sued Dr. Morimoto for medical negligence. *Id.* at 512. Dr. Morimoto moved for summary judgment, arguing that the plaintiff failed to support her claim with expert testimony that he violated the standard of care for plastic surgeons in Washington. *Id.*

The plaintiff then submitted a declaration from Dr. John Shamoun, an out-of-state plastic surgeon. *Boyer*, 10 Wn. App. 2d at 513. Dr. Shamoun declared that he " 'studied, trained and practiced in a variety of locations throughout the country' " and had active medical licenses in Texas, California, and the United Arab Emirates. *Id.* He said he " 'qualified as a medical expert regarding the standard of care applicable to plastic surgeries like the one at issue in this

7

litigation, in several jurisdictions.' " *Id.* And he declared that " '[a]s a result of my education, training and experience, I am well-versed in the standard of care applicable to health[ ]care providers performing surgical procedures such as these.' " *Id.* He then concluded:

> "The standard of care in this case required defendants to exercise the same degree of skill, care and learning expected of other reasonably prudent health[ ]care providers attempting the surgical procedure. . . . This standard is not unique to the [s]tate of Washington and applies on a nationwide basis."

*Id.* Dr. Shamoun concluded that Dr. Morimoto violated the standard of care. *Id.* at 513-14. The trial court granted Dr. Morimoto's motion for summary judgment. *Id.* at 517.

On appeal, Dr. Morimoto argued the trial court correctly rejected Dr. Shamoun's declaration as an expert because he had "only a conclusory statement concerning his familiarity with the standard of care in Washington." *Boyer*, 10 Wn. App. 2d at 518. Division Three agreed. *Id.* It concluded that Dr. Shamoun's declaration "did not qualify him to testify to the standard of care in Washington State" because he "failed to disclose how he knew Washington's standard to equate to a national standard." *Id.* at 524. And an expert "must provide some underlying support for his opinion that the state standard follows the national standard." *Id.*

This case is different than *Boyer*. Here, Dr. Chirkov's declaration provides underlying support for his statement on the applicable standard of care for pathologists. He explains that he knows from his training and experience that all LCME accredited medical schools and ACGME accredited residencies, including

8

those in Washington, "intentionally and methodically" standardize the standard of care with the intent to train pathologists to interpret and report on histological samples in a uniform and consistent way across the country. And he knows from his membership in professional organizations, participation in continuing medical education programs, and review of USCAP publications that the national standard of care continues to be uniformly applied to all states.

Citing *Hill* and *Driggs*, Incyte argues Dr. Chirkov must show that he affirmatively acquired information about Washington's standard of care from personal experience in the state or from a pathologist with personal experience practicing here. In *Hill*, the plaintiff offered testimony from an out-of-state expert who worked and trained in Washington that Washington follows a national standard of care. 143 Wn. App. at 444. And in *Driggs*, an out-of-state expert explained that he learned Washington follows the national standard of care by contacting physicians who practice here. 193 Wn. App. at 887. In each case, Division Three concluded the testimony satisfied the plaintiff's burden to show that their expert was familiar with the Washington standard of care. *Hill*, 143 Wn. App. at 453; *Driggs*, 193 Wn. App. at 902. But neither case holds that an out-of-state expert must seek affirmative assurance from an in-state physician to become familiar with Washington's standard of care.

Dr. Chirkov's testimony amounts to a prima facie showing that he is familiar with the national standard of care for pathologists and that Washington follows that standard. Viewed in a light most favorable to Chervilova, Dr. Chirkov

expressed a qualified opinion for purposes of summary judgment.  We reverse and remand for further proceedings.

Brennan, J

WE CONCUR:

Hazelrigg, A.C.J

Smith, C.J.