170 P.3d 601 (2007)
In re the Parentage of M.F., (DOB: 12-15-93), Child, and
John Corbin, Respondent/Step-Father,
Patricia Reimen, Appellant/Mother,
Edward Frazier, Respondent/Father.
No. 58658-1-I.
Court of Appeals of Washington, Division 1.
November 5, 2007.
*602 Rebecca Jill Torgerson, Brewe Layman, Everett, WA, Catherine Wright Smith, Valerie A. Villacin, Edwards, Sieh, Smith & Goodfriend PS, Seattle, WA, for Appellant.
James Davis Shipman, Podrasky Shipman & Shields, Everett, WA, Patricia S. Novotny, Attorney at Law, Seattle, WA, for Respondents.
Edwin Frazier, pro se.
Christine Wakefield Nichols, pro se.
COX, J.
¶ 1 The primary issue in this case is whether John Corbin has a cause of action as a de facto parent for residential time with M.F., his former stepdaughter.[1] We hold that he does not. We must also decide whether the existing parenting plan governing residential time with M.F. may be modified without the statutorily required showing of adequate cause.[2] We hold that a showing of adequate cause is required, and none has been shown here. We reverse and dismiss.
¶ 2 The parties do not substantially dispute the material facts. Patricia Reimen and Edwin Frazier are the biological parents of M.F., whose date of birth was December 15, 1993. The parental rights and obligations of Reimen and Frazier with respect to M.F., their daughter, are set forth in the parenting plan entered on August 2, 1995, as part of the dissolution of their marriage.
¶ 3 The parenting plan provides that M.F. will reside primarily with Reimen, with alternating weekend residential time and some holidays with Frazier. The plan also provides that Frazier and Reimen shall have joint decision making power. Frazier, who lives in Wenatchee, has consistently paid his child support obligation to Reimen, who lives in Monroe. While Reimen and Frazier have not always strictly adhered to the residential schedule, the plan has never been modified by court order.
¶ 4 Reimen and Corbin were married in October 1995. They are the parents of two sons. Reimen and Corbin separated in 2000. The parental rights and obligations of Reimen and Corbin with respect to their two sons are set forth in the parenting plan entered on December 13, 2002, as part of the dissolution of their marriage. This parenting plan does not apply to M.F. Nevertheless, Corbin continued to have regular contact with M.F. and his two sons with Reimen until August 2005.
¶ 5 In August 2005, Corbin moved to modify the parenting plan governing the two sons he had with Reimen. After this, M.F. abruptly stopped spending time with Corbin. Reimen and Corbin dispute why M.F. stopped seeing him.
*603 ¶ 6 In November 2005, the supreme court decided In re Parentage of L.B.[3] In March 2006, Corbin commenced this proceeding, seeking to be declared a de facto parent of M.F. and seeking residential time with her based solely on that case.[4] Reimen and Frazier are both named as parties.
¶ 7 The record that is before us does not show whether Frazier appeared below. He has not participated in this appeal.
¶ 8 Reimen, pursuant to CR 12(b)(6), moved to dismiss the petition. The trial court denied the motion in its oral decision of June 7, 2006.[5] The court entered its order on August 8, 2006.[6]
¶ 9 Following the court's oral decision in June, a superior court commissioner entered two orders. One was a temporary order that made a threshold determination that Corbin is a de facto parent and ordered a reunification process between him and his former stepdaughter. The other order appointed a guardian ad litem for M.F. and directed further actions. A superior court judge denied Reimen's motion to revise these two orders.
¶ 10 We granted discretionary review.

DE FACTO PARENT
¶ 11 Reimen argues that the trial court erred in denying her CR 12(b)(6) motion to dismiss Corbin's action. We hold that L.B. does not create a common law cause of action for a former stepparent as a de facto parent of a former stepchild where statutory remedies are available.
¶ 12 To prevail, the moving party in a CR 12(b)(6) motion has the burden to establish beyond doubt that the claimant can prove no set of facts consistent with the complaint that would justify recovery.[7] Factual allegations and any reasonable inferences are taken as true.[8] The motion should be "granted sparingly so that a plaintiff is not improperly denied adjudication on the merits."[9]
¶ 13 Interpretation and application of common law causes of action are questions of law that we review de novo.[10]
¶ 14 Here, Corbin did not assert any of the statutory bases for seeking contact with M.F., his former stepdaughter.[11] Rather, Corbin alleges only that he is a de facto parent of M.F. Reimen moved for dismissal of this action, arguing that Corbin had no right to relief on the basis of his sole claim that he is a de facto parent of his former stepdaughter.[12]
¶ 15 The trial court agreed with Corbin. In making its oral ruling, it purported to focus on the test for establishing de *604 facto parenthood, a factual determination.[13] After quoting the test for a de facto parent from L.B., the court stated that "[T]here's a prima facie showing [in this case] of that, just from the fact of the marriage and the length of the marriage."[14] This was error.
¶ 16 Assuming for purposes of argument only that the proper focus of the threshold inquiry for this motion is the test stated in L.B., the trial court misapplied that test. De facto parent status does not exist merely by the fact of marriage and the length of the marriage. Rather, as the four elements of the test state, more is required. Among the additional elements is the requirement that the natural or legal parent consents to and fosters the parent-like relationship. The petitioner and child must also live together in the same household. The petitioner must also assume parental obligations without expectation of financial compensation. And petitioner must show that the parental role has existed for sufficient time to establish the required relationship with the child. The trial court's statement of what constitutes a prima facie case for de facto parenthood omitted reference to these other necessary factors. Accordingly, it was incorrect.
¶ 17 Regardless, there is a more basic reason why the trial court's denial of the dismissal motion was incorrect. The correct starting point for analysis of the motion is not whether the de facto parent test has been met. Rather, the question is whether de facto parenthood may be applied at all to the circumstances of this case. For the reasons stated below, we conclude that it cannot.
¶ 18 We start with the observation that existing statutes permit a former stepparent to assert rights for residential time with a former stepchild. For example, RCW 26.10.030 permits a nonparent to petition for custody of a child.[15] Provisions for child custody, visitation, and support are considered when a court enters an order under Chapter 26.10 RCW.[16] The state supreme court found no constitutional infirmity with RCW 26.10.030(1), permitting a person other than a parent to petition for child custody.[17]
¶ 19 We also note that RCW 26.09.240 arguably would have provided a means by which Corbin could have obtained visitation with his former stepdaughter had he pursued that remedy during the 2002 dissolution of his marriage to Reimen.[18] The supreme court declared that statute unconstitutional in 2005 in In re Parentage of C.A.M.A.[19] But a Division Two case recently held that C.A.M.A. applies prospectively only.[20] Thus, at the time Corbin and Reimen dissolved their marriage, this statutory remedy was available to Corbin. For reasons that are unexplained in this record, he did not seek visitation with M.F. at that time.
¶ 20 Although Corbin argues that the de facto parent cause of action should be available to him, he offers no persuasive argument *605 why the statutes dealing with this subject matter are inadequate to address his situation. Rather, he relies solely on L.B. to avoid the requirements of these statutes.
¶ 21 In an attempt to persuade this court that the statutory procedures need not be followed here, Corbin urges that where a child's well-being requires recognition of three parents, the court should endorse a flexible approach. He emphasizes legal developments recognizing that a child has an interest in maintaining relationships independent of parental interests. Further, Corbin argues that under Washington's Parenting Act, there is no impediment to a three-way parenting plan. The parties give differing significance to the fact that Washington statutes generally adhere to the two-parent/mother-father paradigm. Corbin argues that the mother-father paradigm is merely descriptive of most situations but not injunctive as statutes for multiple-parent adoption and childbearing reflect.
¶ 22 Even if we assume that some or all of the above assertions are correct, we are not persuaded that they support disregarding existing statutes dealing with this subject matter. Moreover, these arguments do not compel courts to fashion a remedy.
¶ 23 We are also concerned about the constitutional implications of permitting a former stepparent and the courts to intervene in the decision-making process of a fit parent. Here, Corbin does not claim and no court has determined that Reimen is an unfit parent. Moreover, there is no claim and no court determination that there is any detriment to the child.
¶ 24 As Troxel v. Granville and other cases indicate, there is a fundamental right that a fit parent has in the care, custody, and control of a child.[21] Intervention by others, including courts, in that process is permitted only under limited circumstances. And the heightened standard that controls such intervention requires a showing of detriment to the child, not the more lenient best interests of the child standard. Significantly, the former standard controls under Washington's current nonparental child custody statute.[22]
¶ 25 We have no reason in this case to either adopt or reject principles set out in the American Law Institute's Principles of the Law of Family Dissolution. But we note that Corbin may be foreclosed from now bringing a de facto parent action under those principles. They provide that "[a]ll of the following individuals should be given a right to bring an action: . . . (c) a de facto parent of the child, . . . who has resided with the child within the six-month period prior to the filing of the action or who has consistently maintained or attempted to maintain the parental relationship since residing with the child."[23]
¶ 26 Assuming for purposes of argument only that Corbin qualified as a de facto parent under ALI Principles, his action would arguably be barred because he failed to bring it within the requisite six-month period stated above.[24] Whether Corbin would qualify under the other clause stated in the principle sufficient to exempt him from the six-month requirement is uncertain.

Parentage of L.B.
¶ 27 We turn to Corbin's reliance on L.B. for authority to bring his petition. We conclude that case is distinguishable and does not control this matter.
¶ 28 There, the parties became romantically involved in a same-sex relationship during which they cohabited.[25] They decided to conceive a child, and a male friend donated sperm to assist the insemination.[26] Both parties attended prenatal medical appointments *606 and birthing classes.[27] Both were present during the birth of L.B.[28] They co-parented the child until their relationship acrimoniously ended six years later, and litigation over access to L.B. began.[29]
¶ 29 One of the members of the relationship petitioned for the establishment of parentage under the statutes. She also sought to be declared a parent by estoppel or as a de facto parent.[30] A court commissioner dismissed the petition, and a superior court judge "reluctantly" affirmed.[31] This court reversed, holding that a common law claim of de facto parentage existed.[32] The supreme court granted a petition for review.[33]
¶ 30 The supreme court framed the issue before it as whether "[l]n the absence of a statutory remedy, the equitable power of our courts in domestic matters permits a remedy outside of the statutory scheme."[34] The court reviewed legislative enactments regarding child custody and visitation to discern state policy and to determine whether clear legislative intent existed to preempt common law rights in that situation.[35] The court concluded that the Uniform Parentage Act and corresponding statutes do not purport to preclude operation of the common law in addressing situations left unanswered after a strict statutory inquiry.[36]
¶ 31 The L.B. court's exhaustive review of the State's legislative enactments and case law revealed that Washington courts have a recognized and accepted role in resolving family law disputes, especially when the legislative enactments speak to an issue incompletely.[37] The common law provides a means for the court, in the absence of governing statutes, to "administer justice according to the promptings of reason and common sense."[38]
¶ 32 Acknowledging that the State's current statutory scheme fails to contemplate all potential scenarios that could arise in the changing and evolving notion of family relations, the court found that State statutes failed to speak to the particular situation presented in L.B. Therefore, in order to "fill the interstices that our current legislative enactment fails to cover in a manner consistent with our laws and stated legislative policy," the supreme court fashioned an equitable remedy.[39] It recognized a common law de facto parent cause of action.
¶ 33 L.B. is distinguishable. There, the court framed the issue in terms of whether an equitable remedy was required in the absence of a statutory procedure regulating the subject matter. Here, there is a statutory framework that is designed to address custody and visitation under the circumstances of this case. As we have already observed, Corbin has failed to persuade us that the statutory procedures are inadequate or incomplete. That it may be difficult for him to fulfill the statutory requirements does not persuade us that those requirements are inadequate or incomplete in the sense that requires application of the de facto parent doctrine.
¶ 34 We also note that both L.B. and the cases on which it relied involved providing access to the courts to those who might otherwise have been barred from visitation with the child. Here, there is no such similar bar. Rather, this is a case of disputes arising in a blended family resulting from consecutive marriages. The legislature contemplated *607 this situation in the existing statutory framework.
¶ 35 To summarize, there is no cause of action of de facto parentage that supports the petition of Corbin for residential time with his former stepdaughter.

MODIFICATION OF PARENTING PLAN
¶ 36 Reimen argues that even if Corbin could establish that he is a de facto parent, he must still meet the adequate cause threshold to modify the existing parenting plan. She also argues that he has failed to do so. We agree with both contentions.
¶ 37 The statutory procedures for establishing adequate cause and requesting modification of a parenting plan are set out in Chapter 26.09 RCW. The party petitioning for modification must submit an affidavit supporting the requested modification, and the non-moving party may file opposing affidavits.[40] Unless the court finds that the affidavits establish adequate cause for a full hearing of the modification petition, the court shall deny the petition.[41]
¶ 38 A court may not modify a parenting plan unless it finds (1) that there has been a substantial change in the circumstances of the child or the non-moving party, (2) modification is in the best interests of the child, and (3) modification is necessary to serve the best interest of the child.[42]
¶ 39 Here, the declaration in support of Corbin's motion did not address the adequate cause threshold standard of RCW 26.09.260. Moreover, the court failed to make any of the statutorily required findings for adequate cause.
¶ 40 Although Corbin argues that the adequate cause determination was implicit in the court's order, a review of the relevant parts of the order shows otherwise. The superior court commissioner stated:
3. This is a new area of law and it would seem that there needs to be a threshold determination in this case, which was what was contemplated in L.B. By way of comparison, the closest thing the court can look at is an adequate cause determination, which is more than a prima facie case; there has to be solid factual basis for sending the matter to trial. It is not conclusively determinative on a trial court regarding the outcome of the case but sets it into a procedural posture and allows temporary orders to proceed and allows it to go to trial where that may be affirmed or dismissed. That is the proper process in this case. If there is no threshold, there would be no purpose in continuing the matter.[[43]]
¶ 41 These observations do not fulfill the adequate cause requirements of the statutes. Failure to apply the modification requirements of RCW 26.09.260 constitutes an abuse of discretion.[44] We must reverse.

OTHER ORDERS
¶ 42 The remaining orders that are before us for review are the superior court's order denying Reimen's motion for revision of the commissioner's two orders and the order appointing the guardian ad litem. We apply the usual standard of review to these orders.[45]
¶ 43 There is no cause of action to support this case. Accordingly, these orders are improper.
¶ 44 We reverse the order denying Reimen's CR 12(b)(6) motion, the order on revision, and the two underlying orders of the commissioner. We dismiss Corbin's petition seeking visitation.
WE CONCUR: COLEMAN and BECKER, JJ.
NOTES
[1] See In re Parentage of L.B., 155 Wash.2d 679, 122 P.3d 161 (2005), cert. denied, ___ U.S. ___, 126 S.Ct. 2021, 164 L.Ed.2d 806 (2006) (holding that a common law claim of de facto parentage existed such that a woman had standing to petition for rights and responsibilities of shared parentage with her former partner).
[2] RCW 26.09.260(1) provides: "[T]he court shall not modify a . . . parenting plan unless it finds . . . a substantial change has occurred in the circumstances of the child or the nonmoving party and that the modification is in the best interest of the child and is necessary to serve the best interests of the child."
[3] 155 Wash.2d 679, 122 P.3d 161 (2005).
[4] Petition for De Facto Parent Rights, Clerk's Papers at 313-15.
[5] Report of Proceedings (June 7, 2006) at 22-25.
[6] Clerk's Papers at 15-18.
[7] San Juan County v. No New Gas Tax, 160 Wash.2d 141, 164, 157 P.3d 831 (2007).
[8] Reid v. Pierce County, 136 Wash.2d 195, 201, 961 P.2d 333 (1998); see also L.B., 155 Wash.2d at 684 n. 2, 122 P.3d 161.
[9] Gaspar v. Peshastin Hi-Up Growers, 131 Wash. App. 630, 635, 128 P.3d 627 (2006), review denied, 158 Wash.2d 1029, 152 P.3d 1033 (2007).
[10] Hudon v. W. Valley Sch. Dist. No. 208, 123 Wash.App. 116, 123, 97 P.3d 39 (2004).
[11] RCW 26.10.030 permits a nonparent to petition for child custody, subject to the requirements of the statutes. RCW 26.09.240 authorizes a nonparent to petition for visitation with a child, subject to case authority dealing with the constitutionality of that statute and the prospective application of that constitutional rule. See, e.g., In re Parentage of C.A.M.A., 154 Wash.2d 52, 66, 109 P.3d 405 (2005) (declaring unconstitutional RCW 26.09.240, which presumed grandparent visitation was in best interests of child); In re Marriage of Anderson, 134 Wash.App. 506, 512, 141 P.3d 80 (2006) (holding that former stepfather could enforce an existing parenting plan that gave him visitation rights with his former stepdaughter because C.A.M.A. applies prospectively only).
[12] While Reimen is the biological parent of M.F., we use the word "parent" to include biological and adoptive parents as well as those who properly fall within the scope of de facto parents under L.B. See also In re Custody of H.S.H.-K, 193 Wis.2d 649, 533 N.W.2d 419, 421 (1995) (referring to biological or adoptive parent's constitutionally protected interests).
[13] The de facto parent test requires: (1) the natural or legal parent consented to and fostered the parent-like relationship; (2) the petitioner and the child lived together in the same household; (3) the petitioner assumed obligations of parenthood without expectation of financial compensation; and (4) the petitioner has been in a parental role for a sufficient time to have established with the child a bonded, dependent relationship, parental in nature. Additionally, recognition of a de facto parent is "limited to those adults who have fully and completely undertaken a permanent, unequivocal, committed, and responsible parental role in the child's life." L.B., 155 Wash.2d at 708, 122 P.3d 161.
[14] Clerk's Papers at 86.
[15] The statute provides: "[A] child custody proceeding is commenced in the superior court by a person other than a parent, by filing a petition seeking custody of the child in the county where the child is permanently resident or where the child is found, but only if the child is not in the physical custody of one of its parents or if the petitioner alleges that neither parent is a suitable custodian." RCW 26.10.030(1). We note that the legislature has largely abandoned the term "custody" in favor of defining relative levels of residency time with the child. L.B., 155 Wash.2d at 700 n. 21, 122 P.3d 161; see also RCW 26.09.184(5).
[16] See RCW 26.10.040(1)(a).
[17] In re Custody of Shields, 157 Wash.2d 126, 137, 144, 136 P.3d 117 (2006).
[18] RCW 26.09.240.
[19] 154 Wash.2d 52, 66, 109 P.3d 405 (2005).
[20] In re Marriage of Anderson, 134 Wash.App. 506, 512, 141 P.3d 80 (2006).
[21] 530 U.S. 57, 60, 120 S.Ct. 2054, 147 L.Ed.2d 49 (2000).
[22] See Shields, 157 Wash.2d at 144, 136 P.3d 117.
[23] PRINCIPLES OF THE LAW OF FAMILY DISSOLUTION: ANALYSIS AND RECOMMENDATIONS § 2.04(1)(c) (emphasis added).
[24] See Id.
[25] L.B., 155 Wash.2d at 683, 122 P.3d 161.
[26] Id. at 683-84, 122 P.3d 161.
[27] Id. at 684, 122 P.3d 161.
[28] Id.
[29] Id.
[30] Id. at 685, 122 P.3d 161.
[31] Id.
[32] Id. at 686, 122 P.3d 161; In re Parentage of L.B., 121 Wash.App. 460, 485, 89 P.3d 271 (2004).
[33] L.B., 155 Wash.2d at 687, 122 P.3d 161.
[34] Id. at 688, 122 P.3d 161 (emphasis in original).
[35] Id. at 694-95, 122 P.3d 161.
[36] Id. at 696, 122 P.3d 161.
[37] Id. at 701, 122 P.3d 161.
[38] Id. at 689, 122 P.3d 161.
[39] Id. at 707, 122 P.3d 161.
[40] RCW 26.09.270.
[41] Id.
[42] RCW 26.09.260(1).
[43] Clerk's Papers at 21.
[44] In re Parentage of Jannot, 110 Wash.App. 16, 22, 37 P.3d 1265 (2002).
[45] State v. Wicker, 105 Wash.App. 428, 432-33, 20 P.3d 1007 (2001).