[No. 35142-1-II.   Division Two.   December 4, 2007.]

*In the Matter of the Parenting and Support of* S.M.L.

KASSIE S. DUGGER, *Appellant*, THEODORE R. LOPEZ, *Respondent*.

*Theodore R. Lopez*, pro se.

*Matthew J. Bellmer*, for appellant.

¶1 VAN DEREN, A.C.J. — Kassie Dugger appeals the trial court's award of primary residential time with SML,[1] her minor daughter, to Theodore Lopez, SML's father. She argues that the trial court abused its discretion by not appointing a guardian ad litem (GAL) for SML and by ordering a parenting plan that was not in SML's best interests. We hold that, absent circumstances raising concern for the child's welfare and safety, the trial court is not required to appoint a GAL for the child in an action under chapter 26.26 RCW solely to establish a parenting plan between acknowledged, legal parents. We affirm.

## FACTS

¶2 Kassie Dugger, 28 years old,[2] and Theodore Lopez, 46 years old,[3] are the parents of a daughter, SML, 7 years old.[4] Dugger and Lopez were never married, but Lopez acknowledged paternity of SML when she was born. In 2001, when Dugger and Lopez ended their relationship, SML primarily resided with Lopez. In 2005, day care costs became prohibitively high for Lopez; Dugger began physically caring for SML on a regular basis.

¶3 When SML reached school age, Dugger wanted her to attend the same school in her neighborhood that her other two children attended. Originally, Dugger and Lopez agreed that SML would attend school in Dugger's neighborhood

---

[1] We use SML's initials to protect her privacy to the extent it remains possible.

[2] Dugger was born on April 9, 1979.

[3] Lopez was born on May 29, 1961.

[4] SML was born on January 17, 2000.

with the stipulation that Dugger would pick her up from Lopez's home before school and return her after school.[5] Later, Dugger changed her mind and had SML stay with her during the week and with Lopez during the weekends.[6]

¶4 In 2006, Dugger and Lopez filed separate petitions under chapter 26.26 RCW to establish a parenting plan for SML in which each asked to be designated as her primary residential parent. Both sought ex parte restraining orders and custody of SML before the initial show cause hearing. Lopez requested that a GAL be appointed for SML at the show cause hearing.

¶5 At the show cause hearing, the trial court refused to appoint a GAL for SML and ordered a temporary parenting plan in which Dugger had custody of SML during the school week, but Lopez would have custody of her during the weekends. SML's custody over the summers and holidays was split fairly evenly.

¶6 Twelve days before the scheduled trial on the final parenting plan, Dugger moved to continue the trial (1) because she wanted a GAL appointed to determine SML's best interests, (2) "[d]ue to lack of discovery," and (3) due to her "[l]ack of [k]nowledge or experience of [l]ocal [l]aws and [r]ules of the court." Clerk's Papers at 35.

¶7 The trial court heard the motion for the continuance on the day of trial.

THE COURT: So you want a parenting investigator appointed?

MS. DUGGER: If the two of us cannot agree, and that seems to be what it is, that we cannot agree, so that's the only—

THE COURT: No, I mean, that's the basis for the continuance?

MS. DUGGER: Yeah, is due to the fact that we cannot agree, and therefore I feel a guardian ad litem probably needs to be

---

[5] Dugger and Lopez reside about 30 minutes from each other.

[6] The trial court had not previously established a formal parenting plan for SML.

appointed so that way you're not the one having to decide whether she goes with her dad or she goes with me or it doesn't draw out this trial as being—you know, us fighting back and forth.

THE COURT: Do you have $750 to pay the clerk today—

MS. DUGGER: No.

THE COURT: —for the parenting investigator to be appointed?

MS. DUGGER: No.

MR. LOPEZ: Nor I, sir.

THE COURT: Do you have that?

MR. LOPEZ: No, sir. I'm supporting two families. I'm supporting my daughter at my house, and now with the garnishment I'm supporting my daughter at her house. I cannot afford that, no, sir.

Report of Proceedings (RP) (Feb. 14, 2007) at 11-12. After asking about the garnishment of Lopez's wages, medical care, and any other persons living in their households, the court took a recess and then denied the motion for the continuance.

I don't see any way that either of you can pay for a guardian ad litem, and while I think that it would be helpful in this case, under the local rule, it requires that you split the cost and pay money into the clerk's office before the guardian ad litem is appointed, and I don't know of any guardian ad litems that will do it pro se, or excuse me, pro bono,[7] so I'm going to go ahead and take testimony from each of you. I probably won't be able to rule today and I'll probably want more information from each of you.

RP (Feb. 14, 2007) at 20. Essentially, the dispute over the parenting plan centered around which of the parents would have SML during the school week.

---

[7] The Pierce County Superior Court web site contains the chapter 26.09 RCW Certified Registry list. There are 26 GALs, 2 of whom indicate that they will work pro bono upon appointment by a family law judge. *See* Pierce County Superior Court, Guardians Ad Litem, *available at* http://www.co.pierce.wa.us/pc/abtus/ourorg/supct/gal.htm (last visited Nov. 19, 2007).

¶8 The trial court reviewed the court file and heard testimony from Dugger and Lopez. Dugger testified that she is currently married to an electrician,[8] was previously married twice, and is a stay-at-home mother. She has two older children from other relationships who reside with her. She and her husband own their own home and, when SML resides with her, SML shares a room with Dugger's other minor daughter.

¶9 The trial court also considered evidence that Dugger was referred to Child Protective Services (CPS). She experienced complications with the birth of her first child and was given pain medication. Her aunt became worried that she was addicted to the pain medication and reported her to CPS. After a few visits the case was closed, but Dugger did not recall whether the referral was "founded or unfounded or inconclusive." RP (Feb. 14, 2006) at 24.

¶10 Other evidence showed that Dugger filed a domestic violence report against an individual in 1998, was charged with operating a motor vehicle without an operator's license or insurance, and pleaded guilty to reckless burning in January 2003. From 2002 to August 2004, her other two children resided with her parents in Indiana because of her pending criminal case and fear of a possible jail sentence. The children returned to her care after she pleaded guilty to reckless burning but was not incarcerated.

¶11 Lopez testified that he is currently an assistant manager at Wal-Mart, where he works approximately 50 to 52 hours per week on a schedule that varies from week to week. He lives in a rented four-bedroom home with his fiancée, her minor daughter, his adult brother, and SML. Lopez's fiancée is a department manager at Wal-Mart and works regular weekday hours. When SML is with Lopez during his workweek, he takes her to day care in the morning, day care puts her on the bus to school, and she is bussed back to day care after school.

---

[8] Dugger's husband was unemployed at the time of the show cause hearing and was receiving unemployment benefits.

¶12 Lopez alleged in his proposed parenting plan that he had "concerns about long-term emotional or physical impairment on the mother's part which interferes with the performance of parenting functions and the abusive use of conflict by the parent which creates a danger of serious damage to the child's psychological development." RP (Feb. 14, 2006) at 37. He based the allegations on his belief that Dugger was saying disparaging things about him to SML and asking her to choose sides between her father and her mother.

¶13 Dugger alleged that Lopez was taking similar actions. Both recited their own accounts of an instance of abusive behavior that occurred when Dugger served an ex parte restraining order on Lopez. Her friend served the order on Lopez in a grocery store while Dugger took SML from a nearby pet store she was visiting with Lopez's fiancée's daughter. Dugger put SML in her vehicle and did not allow Lopez to say good-bye to her. Dugger testified that Lopez was screaming at her so she did not allow him to say good-bye, but Lopez testified that he did not scream at her and that Dugger was acting out of spite.

¶14 The trial court learned that approximately two months before the trial, Dugger took SML for psychological counseling, but that Dugger had not yet received a report from the counselor. The trial court ordered Dugger to obtain and provide copies of the report to the court and to Lopez before it made a decision. Evidence also revealed that Dugger took SML for speech and hearing tests that resulted in a diagnosis of a treatable speech impediment. Lopez denied knowing of the problem, and Dugger disputed this lack of knowledge. The trial court also ordered Dugger to provide copies of those tests both to the court and to Lopez before it made a decision on SML's parenting plan.

¶15 After hearing the testimony of the parties and reviewing the evidence each provided, including the test results provided by Dugger, the trial court ruled that Lopez would be the primary residential parent for SML during the school year, except on the weekends, when SML would

reside with Dugger.[9] The trial court ordered that the parents were to split winter break and alternate the spring school break. During the summer, Dugger was ordered to be the primary residential parent until the week before school began, subject to Lopez's right to have her every other weekend and for two full weeks. Other holidays were split fairly evenly between the parents. Although the trial court noted that there was abusive use of conflict, it awarded joint decision making because Dugger had learned through SML's counseling about the abusive effect of the use of conflict.

¶16 Dugger unsuccessfully sought reconsideration. She now appeals.

## ANALYSIS

¶17 Dugger argues that the trial court abused its discretion by not appointing a GAL for SML and by making findings and creating a parenting plan that were not in SML's best interests.

### I. STANDARD OF REVIEW

¶18 The trial court abuses its discretion when its "decision is 'manifestly unreasonable, or exercised on untenable grounds, or for untenable reasons.'" *Mayer v. Sto Indus., Inc.*, 156 Wn.2d 677, 684, 132 P.3d 115 (2006) (quoting *Associated Mortgage Investors v. G.P. Kent Constr. Co.*, 15 Wn. App. 223, 229, 548 P.2d 558 (1976)). "[I]f the trial court relies on unsupported facts or applies the wrong legal standard," its decision is exercised on untenable grounds or for untenable reasons; and "if 'the court, despite applying the correct legal standard to the supported facts, adopts a view that no reasonable person would take,'" the trial court's decision is manifestly unreasonable. *Mayer*, 156 Wn.2d at 684 (quoting *State v. Rohrich*, 149 Wn.2d 647,

---

[9] The record does not expressly state that Dugger provided the reports for the trial court's review, but we assume she followed the court's order.

654, 71 P.3d 638 (2003)). The appellant "bears the burden of proving that the trial court abused its discretion." *Childs v. Allen*, 125 Wn. App. 50, 58, 105 P.3d 411 (2004), *review denied*, 155 Wn.2d 1005 (2005).

## II. GUARDIAN AD LITEM APPOINTMENT

¶19 Dugger argues that a GAL should have been appointed for SML to protect her constitutional due process rights and that SML should not be bound by a judgment in which her best interests were not represented. Although couched as SML's claims, we treat these claims as Dugger's own assignments of error, as Dugger has not been appointed to act as her daughter's GAL for purposes of pursuing any claim by SML.

¶20 Because Dugger and Lopez were never married, they asked the court to establish a parenting plan for SML under the Uniform Parentage Act (Parentage Act), chapter 26.26 RCW. Under the Parentage Act, "[o]n the same basis as provided in chapter 26.09 RCW, [the dissolution statute,] the court shall make residential provisions with regard to minor children of the parties, except that a parenting plan shall not be required unless requested by a party." RCW 26.26.130(7).

¶21 In a dissolution action involving minor children, "[t]he court *may* order an investigation and report concerning parenting arrangements for the child, or may appoint a guardian ad litem pursuant to RCW 26.12.175, or both." RCW 26-.09.220(1) (emphasis added). RCW 26.12.175 provides:

> (1)(a) The court may appoint a guardian ad litem to represent the interests of a minor or dependent child when the court believes the appointment of a guardian ad litem is necessary to protect the best interests of the child in any proceeding under this chapter. . . . The court may appoint a guardian ad litem

from the court-appointed special advocate program, if that program exists in the county.[10]

¶22 Pierce County Superior Court Rule 94.04(e)(2)(A) governs the payment of fees for a GAL:

When an order allowing appointment of a guardian ad litem/ parenting investigator off the RCW 26.09 Certified Registry is signed, a $750.00 initial retainer fee shall be paid to the Clerk of the Court, unless for good cause shown a different amount is ordered by the Court at the time of the appointment of a guardian ad litem/parenting investigator and is reflected in the order.

The guardian ad litem/parenting investigator's time shall be paid from this retainer at the rate of $75.00 per hour. When the retainer is exhausted, the guardian ad litem/parenting investigator shall request payment of additional fees from the court. No additional fees will be allowed without prior authorization of the court.

¶23 Even though the current statutory language clearly allows the trial court to appoint a GAL in its discretion, Dugger relies on an older case from Division Three of this court, *In re Custody of Brown*, 77 Wn. App. 350, 890 P.2d 1080 (1995), contending that due process requires the appointment of a GAL for SML.

¶24 *Brown* is predicated on a former version of the Parentage Act that required that a child be made a party to an action to determine parentage and required either the minor child to be represented by his or her general guardian or a GAL, but not the minor child's parents. Former RCW 26.26.090(1) (1984); former RCW 74.20.310 (1991); *Brown*, 77 Wn. App. at 352. Under the former Parentage Act, Division Three properly concluded that, even in a private paternity action, due process required the appointment of a GAL because " 'no individual should be bound by a judgment affecting his or her interests where he [or she]

---

[10] The court-appointed special advocate program does not exist for family court proceedings in Pierce County. *See* Wash. Dep't of Cmty., Trade & Econ. Dev., Guide to Crime Victims Services, *available at* http://www.cted.wa.gov/ocvaGuide/details .asp?id=162 (last visited Nov. 19, 2007).

has not been made a party to the action.' " *Brown*, 77 Wn. App. at 353 (alteration in original) (quoting *State v. Santos*, 104 Wn.2d 142, 147, 702 P.2d 1179 (1985)).

¶25 In *Brown*, the father argued that a GAL was not required for the establishment of a parenting plan in a private paternity action because under the Parentage Act the parenting plan is determined on the same basis as in a dissolution action, which does not require the appointment of a GAL. *Brown*, 77 Wn. App. at 354-55. The court disagreed with this contention because "[t]he statutory authority for a parenting plan is set out in [the Parentage Act]; the reference to [the dissolution statute] is merely the direction to apply the same procedures and criteria as used in [that statute] in formulating a paternity plan." *Brown*, 77 Wn. App. at 355. The court held that the statute was clear on its face and that "[t]he appointment of a guardian ad litem is mandatory for all private paternity actions, including residential placement determinations authorized by RCW 26.26.130(6)." *Brown*, 77 Wn. App. at 354.

¶26 But the legislature repealed the Parentage Act statute applicable in *Brown* and the present statute no longer makes the minor child a necessary party to a paternity action. *See* RCW 26.26.510.[11] Thus, the court's reasoning in *Brown* no longer applies. The statute is now clear on its face that appointment of a GAL is discretionary in Parentage Act actions, as well as in dissolution actions: "The court *may* appoint a guardian ad litem to represent the interests of a minor or dependent child when the court believes the appointment of a guardian ad litem is necessary to protect the best interests of the child in any proceeding under this chapter." RCW 26.12.175(1)(a) (emphasis added).

---

[11] The current Parentage Act was established by Laws of 2002, chapter 302, and became effective on June 13, 2002. RCW 26.26.510 provides:

The following individuals must be joined as parties in a proceeding to adjudicate parentage:

(1) The mother of the child;

(2) A man whose paternity of the child is to be adjudicated; and

(3) An intended parent under a surrogate parentage contract, as provided in RCW 26.26.210 through 26.26.260.

■ ¶27 And Dugger points to no binding precedent, and we could find none, where due process required the appointment of a GAL for a minor child in a private action to establish a parenting plan. Furthermore, here, procedural safeguards protected SML's best interests. The trial court considered testimony from both parents and required Dugger to provide SML's medical and psychological evaluations for its review before it made a decision on the parenting plan.

¶28 The trial court heard from both parents, weighed the evidence, and made findings that were sufficiently supported by the record. The parties could not afford a GAL and, instead of delaying the proceedings and waiting for the possibility that the parties might be able to afford a GAL in the future, the trial court expeditiously determined a parenting plan.[12] The trial court's decision was not unreasonable or untenable, and the court did not abuse its discretion by not appointing a GAL for SML.[13]

¶29 A majority of the panel having determined that only the foregoing portion of this opinion will be printed in the Washington Appellate Reports and that the remainder shall be filed for public record pursuant to RCW 2.06.040, it is so ordered.

ARMSTRONG and QUINN-BRINTNALL, JJ., concur.

---

[12] Although the Pierce County Superior Court GAL registry contains the names of two lawyers willing to serve as pro bono GALs in family law matters, those volunteers are reserved for indigent clients. It is extremely unlikely that Dugger and Lopez would have qualified for their appointment because Lopez was fully employed at Wal-Mart and Dugger was married to an electrician, and both supported other children in their households, presumably with income derived through employment or other benefits. Under these circumstances, the trial court need not have considered referring them for appointment without requiring payment.

[13] Dugger seems to have misapprehended the role of the GAL in stating that a GAL would relieve the trial court from having to make the parenting plan decision. A GAL does not make parenting plan decisions; that obligation rests solely with the trial court. See RCW 26.09.220(1) ("The court may order an investigation and report concerning parenting arrangements for the child."); RCW 26.12.175(1)(b) ("Unless otherwise ordered, the guardian ad litem's role is to investigate and report factual information to the court.").