# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION  II

| | |
|---|---|
| In the Matter of the Parenting Plan of: | No.  56580-3-II |
| EVAN NICHOLAS FLORAMO, | |
| Appellant, | |
| v. | UNPUBLISHED  OPINION |
| BLYTHE MORGAN ELLINGTON, | |
| Respondent. | |

WORSWICK, J. — Evan Floramo appeals the trial court's entry of a parenting plan and final order and findings on a petition to change a parenting plan that named Blythe Ellington as the primary residential parent of Floramo and Ellington's child.[1]  On appeal, Floramo argues that (1) the trial court erred when it entered a parenting plan naming Ellington the primary residential parent, despite Ellington not having filed a petition for a modification to the existing parenting plan, and (2) the trial court abused its discretion when it denied Floramo's motion for a continuance.

We hold that (1) the trial court properly exercised its broad discretion to modify the parenting plan after reviewing Floramo's petition, Ellington's affidavit in response, and entering a finding of adequate cause, and (2) the trial court did not abuse its discretion when it denied Floramo's motion for a continuance.  Accordingly, we affirm.

---

[1] Floramo also appeals the trial court's denial of his motion for reconsideration, but does not argue it on appeal, and we do not consider it.

FACTS

Evan Floramo and Blythe Ellington share a minor daughter, M.E. A 2014 parenting plan was in effect that gave Floramo and Ellington equal time as residential parents. On January 20, 2021, Floramo filed a petition to modify the parenting plan. Floramo requested a major change in the parenting schedule stating that M.E.'s living situation had changed substantially and was harmful to her physical, mental, or emotional health. Floramo requested that the court limit Ellington's residential time.

In a declaration attached to his petition, Floramo stated that M.E.'s life was being negatively affected by Ellington's life choices and relationships. The majority of his declaration focused on M.E.'s struggles with schoolwork and school attendance, which he attributed to Ellington. Floramo also attached multiple exhibits showing M.E.'s poor school attendance and incomplete assignments.

On February 22, Ellington filed a form response to Floramo's petition. On the form, Ellington wrote, "While I do agree there needs to be a substantial change in the current agreement, I believe [M.E.] will be more successful, happy, and healthy, she should reside with [Ellington]." Clerk's Papers (CP) at 42. Ellington also requested the court place limitations on Floramo.

Ellington checked a box on the form that states, "If the court changes the current parenting/custody order based on the reasons listed in the other parent's custodian's *Petition*, I ask the court to approve my proposed *Parenting Plan* or *Residential Schedule*. I am filing my proposed *Parenting Plan* or *Residential Schedule* at the same time as this *Response*." CP at 44. Below that box, the form reads:

> Warning! If you want a change to the current parenting/custody order based on different reasons than listed in the other parent's (or non-parent custodian's) Petition, you must file your own Petition to Change a Parenting Plan, Residential Schedule or Custody Order (form FL Modify 601).

CP at 44.

Ellington also attached a declaration to her response. In it, Ellington stated that Floramo, without notifying Ellington, had moved M.E. out of the school they had agreed she was to attend. She also stated Floramo had not put Ellington on the paperwork that enrolled M.E. in the new school. She further stated that Floramo had recently been arrested and had failed to make child support payments. Ellington then requested that M.E. have more residential time with her.

On February 24, the trial court held an adequate cause hearing and entered an order on adequate cause to change a parenting/custody order.[2] The court found there was adequate cause to hold a trial on Floramo's petition to modify the parenting plan.

The trial court held a trial on August 4. At the trial, Floramo, appearing pro se, requested a continuance. Floramo stated that his counsel withdrew and that he was in the process of obtaining new counsel. Ellington's counsel responded that Floramo's counsel had withdrawn in May 2021. VRP (Aug. 4, 2021) at 8. Floramo also stated that he had a binder of material relevant to the trial that he intended for the court to review.

During the August 4 proceeding, in response to the trial court's question, Floramo admitted that he had missed a July 7 status hearing on the parenting plan modification because he had been in a different court on a different matter but failed to notify the trial court.

---

[2] There is no VRP from the adequate cause hearing in the record on appeal.

In response to the trial court's statement that Ellington had not filed a petition to modify the parenting plan, Ellington's counsel responded that Floramo had ample notice based on Ellington's response to Floramo's petition and her statements attached thereto asking for modification.

The trial court then denied Floramo's motion for a continuance. The court stated that it was unfair to grant Floramo a continuance because trial had been set for several months, Floramo had been without an attorney for several months, and that Floramo was now appearing with documents Ellington had not seen. The trial court offered Floramo a one-hour recess to discuss the matter with Ellington and attempt to come to a resolution or to come to an agreement on a plan of how to proceed with the trial. However, Floramo instead began to make his case on the merits to the court and did not acquiesce to the recess. The trial court proceeded with the trial.

Floramo testified that he was arrested at a casino in July 2021. It was unclear from Floramo's testimony what Floramo was charged with, if anything, and he testified only that he was arrested for "drinking" and that there had been an altercation involving his fiancée and another woman. Verbatim Report of Proceedings (VRP) (Aug. 4, 2021) at 19. Floramo then testified that he had been arrested previously in October 2018 for negligent driving and resisting arrest after rear-ending another car. He testified that he pled guilty to a crime, but it is unclear from his testimony what that crime was.

Floramo admitted that he had unilaterally removed M.E. from her school and enrolled her in a new one. He testified that Ellington took her own name off of M.E.'s school documents and that he replaced Ellington's name with that of his fiancée. Floramo also admitted that in July

4

2021, two weeks before trial, he showed up to the exchange location to pick up M.E. after drinking alcohol, swore at Ellington, and raised his voice.

Ellington testified that Floramo was arrested in October 2018. Ellington also testified that Floramo arrived to the July exchange inebriated, that she could smell alcohol on him, and that he began yelling at Ellington in front of M.E. Ellington then testified that Floramo pointed his finger in M.E.'s face and swore at her about Ellington. Ellington's friend, KC Lott, testified consistently with Ellington's testimony.

At the conclusion of the trial, the court appointed a guardian ad litem (GAL) to conduct a short interview with M.E. The court then set over proceedings for a status conference on August 18 to review the GAL report.

Floramo and Ellington both appeared at the August 18 hearing represented by counsel. VRP (Aug. 18, 2021) at 3. The GAL provided a report to the trial court. The court then stated that it had postponed its decision on the petition to modify pending the GAL report and counselling sessions between the parties. The court scheduled a hearing for August 31 to enter its ruling.

However, on August 18, the same day as the status hearing, the trial court filed a written decision. The trial court entered the following findings:

> RCW 26.09.260 states that the Court shall not modify a prior parenting plan unless it finds, upon the basis of facts that have arisen since the prior plan, that a substantial change has occurred in the circumstances of the child or the non-moving party and that the modification is in the best interest of the child. It goes on to state that the court shall retain the residential schedule unless:
>
> c. The child's present environment is detrimental to the child's physical, mental, or emotional health and the harm likely to be caused by a change of environment is outweighed by the advantage of a change to the child.

5

In reviewing the evidence, the Court finds that the present environment in Mr. Floramo's home is detrimental to the child and that a 50/50 plan is not workable between these two parents.

Overall, the Court did not find Mr. Floramo to be credible. A couple of striking issues: school. Father testified he just wants mother to make sure that [M.E.] attends school and blames mother for absences. The school records as contained in Exhibit 101 clearly shows that both parents [were] responsible for many absences. It is clear that absences were not primarily Ms. Ellington's responsibility. Although this needs to improve. There should be NO absences. In clear violation of the 2014 Parenting Plan, Mr. Floramo unilaterally enrolled [M.E.] in a different school district in September 2020, closer to his home. The Plan calls for joint decision making, specifically for education decisions (among other issues). This is clearly an abusive use of conflict. Mother testified that the parents had agreed to Sunrise Elementary in Puyallup, where a waiver was required. Father testified that he didn't agree, yet he signed the necessary waivers for several years. Father put his new girlfriend's [January Carera] name on the school documents as the contact person. He testified that Ms. Ellington did that herself (not credible— why would she eliminate herself from the school information). Then in the next breath, Mr. Floramo testified that he had to put Ms. Carera's name as the emergency contact as mother so that she could pick up and drop off.

The testimony regarding the July 25, 2021 exchange was extremely concerning to the Court. Both parents testified that Mr. Floramo had alcohol and that he was very angry and swore at Ms. Ellington in front of [M.E.]. Ms. Lott's testimony was consistent with Ms. Ellington's version of events.

Mr. Floramo's behavior, demeanor and manner while testifying is also concerning to the Court. He appeared very angry and agitated, which appears to be consistent with his behavior on July 25, 2021. The Court has concerns about his arrest and conviction from October 17, 2018 for DUI (exhibit 101 texts) and assaulting a law enforcement officer (Assault 3). The Court understands that the case was resolved by negotiation but the facts underlying the charges are concerning.

The arrest on June 14, 2021 is also very concerning to the Court. Mr. Floramo appears to have an issue with alcohol and anger.

CP at 61-62.

The trial court designated Ellington as the primary residential parent. The court concluded that "the parties may appear on August 31, 2021 at 1:30 as previously scheduled" if there was a disagreement as to the final order. CP at 63.

On August 25, Floramo filed a motion for reconsideration. The trial court denied the motion.

On September 30, the trial court entered the final parenting plan. Under "Reasons for putting limitations on a parent (under RCW 26.09.191)," the trial court found: "Abusive use of conflict - Evan Floramo uses conflict in a way that may cause serious damage to the psychological development of a child listed in 2. Evan Floramo appears to have an issue with alcohol and anger." CP at 98-99. The trial court named Ellington the custodian and primary residential parent.

In its final order on the parenting plan, the trial court approved a major change to the parenting plan because of "a substantial change in the [child's] situation" and that the "requested change is in the [child's] best interest." CP at 108. The court further found, "The [child's] current living situation is harmful to their physical, mental, or emotional health. It would be better for the [child] to change the order." CP at 108. The court incorporated its prior written and oral rulings into the order.

Floramo appeals the September 30 parenting plan and the final order and findings on the petition to change a parenting plan.

ANALYSIS

I. LEGAL PRINCIPLES

Floramo argues that the trial court erred when it entered the parenting plan that named Ellington the primary residential parent because Ellington did not file a petition to modify the existing 2014 parenting plan. Floramo argues that because the trial court did not find adequate cause to modify the 2014 parenting plan based on a petition filed by Ellington, the court then abused its discretion when it entered the parenting plan following trial. Floramo further argues that the trial court abused its discretion when it denied his motion for a continuance. Each of Floramo's arguments fail.

A.    *Parenting Plan Review*

The trial court has broad discretion in developing a parenting plan. *In re Marriage of Katare*, 175 Wn.2d 23, 35, 283 P.3d 546 (2012). The trial court must wield this discretion in the best interest of the children and only after considering the factors identified in RCW 26.09.187(3). *In re Parentage of J.H.*, 112 Wn. App. 486, 492-93, 49 P.3d 154 (2002).

RCW 26.09.187(3)(a) provides that "[t]he court shall make residential provisions for each child which encourage each parent to maintain a loving, stable, and nurturing relationship with the child, consistent with the child's developmental level and the family's social and economic circumstances. The child's residential schedule *shall* be consistent with RCW 26.09.191." (Emphasis added.) Accordingly, superior courts are required by statute to consider the limiting provisions of RCW 26.09.191 when determining residential provisions of a parenting plan. *Katare*, 175 Wn.2d at 35-36; RCW 26.09.187(3)(a).

We review a trial court's parenting plan for an abuse of discretion. *In re Marriage of Black*, 188 Wn.2d 114, 127, 392 P.3d 1041 (2017). A trial court abuses its discretion when its decision is manifestly unreasonable, based on untenable grounds or reasons, or the trial court misapplies the law. *In re Marriage of Black*, 188 Wn.2d at 127; *Muridan v. Redl*, 3 Wn. App. 2d 44, 54, 413 P.3d 1072 (2018).

We are reluctant to disturb child placement decisions "[b]ecause the trial court hears evidence firsthand and has a unique opportunity to observe the witnesses." *In re Parenting & Support of C.T.*, 193 Wn. App. 427, 442, 378 P.3d 183 (2016). The party challenging the parenting plan order "'bears the heavy burden of showing a manifest abuse of discretion'" by the trial court. *In re Marriage of Kim*, 179 Wn. App. 232, 240, 317 P.3d 555 (2014) (quoting *In re Marriage of Landry*, 103 Wn.2d 807, 809, 699 P.2d 214 (1985)).

We do not reweigh the evidence to determine if we would reach a different conclusion from the trial court. *In re Marriage of McNaught*, 189 Wn. App. 545, 561, 359 P.3d 811 (2015). The trial court is better positioned than appellate courts to weigh evidence and credibility in custody proceedings and we do not review those determinations. *In re Marriage of Chandola*, 180 Wn.2d 632, 650 n.5, 327 P.3d 644 (2014); *In re Marriage of Eklund*, 143 Wn. App. 207, 212, 177 P.3d 189 (2008).

"Assignments of error not argued or further referred to in a brief are treated as abandoned." *In re Estate of Wimberley*, 186 Wn. App. 475, 503, 349 P.3d 11 (2015).[3]

---

[3] *See also* RAP 10.3(6) (requiring appellate briefs to contain "[t]he argument in support of the issues presented for review, together with citations to legal authority and references to relevant parts of the record").

Unchallenged findings of fact are verities on appeal. *In re Welfare of A.W.*, 182 Wn.2d 689, 711, 344 P.3d 1186 (2015).

B.    *Statutory Provisions*

We review questions of statutory interpretation de novo. *In re Marriage of Ruff & Worthley*, 198 Wn. App. 419, 424, 393 P.3d 859 (2017). We look to the plain meaning of the statute to discern the legislature's intent. *Ruff & Worthley*, 198 Wn. App. at 424. Where a statute is clear and unambiguous on its face, we derive the statute's meaning from the plain language alone, and our inquiry ends. *Ruff & Worthley*, 198 Wn. App. at 424-25. "Statutes relating to the same subject are construed together, and in ascertaining legislative intent, the court harmonizes and reads the statutes together as constituting a unified whole." *In re Estate of Little*, 9 Wn. App. 2d 262, 276, 444 P.3d 23 (2019).

Relevant here, as noted above, RCW 26.09.187(3)(a) provides, in pertinent part, "The child's residential schedule shall be consistent with RCW 26.09.191." RCW 26.09.191(3) provides, in pertinent part:

(3) A parent's involvement or conduct may have an adverse effect on the child's best interests, and the court may preclude or limit any provisions of the parenting plan, if any of the following factors exist:

. . . .

(b) A long-term emotional or physical impairment which interferes with the parent's performance of parenting functions as defined in RCW 26.09.004;

(c) A long-term impairment resulting from drug, alcohol, or other substance abuse that interferes with the performance of parenting functions;

. . . .

(e) The abusive use of conflict by the parent which creates the danger of serious damage to the child's psychological development.

## II. ERRORS ASSIGNED BUT NOT ARGUED

As an initial matter, Floramo assigns error to the trial court's findings of fact entered in its written decision and its final order and findings on petition to change a parenting plan. Floramo also assigns error to the trial court's denial of his motion for reconsideration. Floramo does not argue these issues in his brief. Accordingly, we treat these assignments as abandoned and the findings of fact as verities on appeal. *Estate of Wimberley*, 186 Wn. App. at 503; *Welfare of A.W.*, 182 Wn.2d at 711.

## III. PARENTING PLAN NOT PETITIONED FOR

Floramo argues that the trial court's modification of the parenting plan granting relief to the party who did not file the request for modification was contrary to law. He further argues that the court's decision was an abuse of discretion because it did not follow a finding of adequate cause based solely on a petition for a major modification filed by Ellington. We disagree.

A.   *Statutory Requirements*

Floramo argues that the trial court's modification of the parenting plan in Ellington's favor, when she did not file the petition for modification, was contrary to law in violation of RCW 26.09.260 and .270. We disagree.

RCW 26.09.260 provides, in pertinent part:

> (1) [T]he court shall not modify a prior custody decree or a parenting plan unless it finds, upon the basis of facts that have arisen since the prior decree or plan or that were unknown to the court at the time of the prior decree or plan, that a substantial change has occurred in the circumstances of the child or the nonmoving party and that the modification is in the best interest of the child and is necessary to serve the best interests of the child. . . .

11

(2) In applying these standards, the court shall retain the residential schedule established by the decree or parenting plan unless:

. . . .

(c) The child's present environment is detrimental to the child's physical, mental, or emotional health and the harm likely to be caused by a change of environment is outweighed by the advantage of a change to the child.

RCW 26.09.270 provides,

A party seeking . . . [a] modification of . . . [a] parenting plan shall submit together with his or her motion, an affidavit setting forth facts supporting the requested order or modification and shall give notice, together with a copy of his or her affidavit, to other parties to the proceedings, who may file opposing affidavits. The court shall deny the motion unless it finds that adequate cause for hearing the motion is established by the affidavits . . . .

Looking to the plain language of these statutes, nothing in RCW 26.09.260 mandates that a respondent to a petition for a major change to a parenting plan must submit a petition for a trial court to find adequate cause to modify the existing parenting plan. And RCW 26.09.270 requires a party "seeking modification of a parenting plan" to submit an affidavit "together with his or her motion," but it makes no requirement as to what that motion must be or what form it must take.

More importantly, we must harmonize these statutes with the requirements of RCW 26.09.187(3)(a) and RCW 26.09.191(3). *In re Estate of Little*, 9 Wn. App. 2d at 276.

As noted above, RCW 26.09.187(3)(a) provides, in pertinent part, "The child's residential schedule shall be consistent with RCW 26.09.191." Here the trial court found that Floramo engaged in abuse of conflict and had problems with anger and alcohol use. These findings are verities on appeal, and they align with RCW 26.09.191(3), which states that the trial court may limit a parent's involvement with a child where the parent exhibits "(c) [a] long-term impairment resulting from drug, alcohol, or other substance abuse that interferes with the performance of

12

parenting functions;" and "(e) [t]he abusive use of conflict by the parent which creates the danger of serious damage to the child's psychological development."

Because the trial court found that Floramo's time should be restricted under RCW 26.09.191, the court was required under RCW 26.09.187(3)(a) to create a residential schedule consistent with those findings. Reading RCW 26.09.187, .191, .260, and .270 in harmony, the trial court must be allowed to modify a parenting plan in favor of a non-petitioning respondent when it finds restrictions under RCW 26.09.191 are warranted. To hold otherwise would create an untenable precedent that would mandate trial courts ignore dangerous information about a petitioning party that comes to light in a modification trial. Moreover, this holding aligns with the trial court's broad discretion to develop a parenting plan in the best interest of the child. *Marriage of Katare*, 175 Wn.2d at 36; *Parentage of J.H.*, 112 Wn. App. at 492-93.

Indeed, here the trial court found that the revision to the parenting plan was in the best interests of the child. And Floramo makes no showing otherwise.

Floramo cites *In re Parentage of M.F.*, 141 Wn. App. 558, 561, 170 P.3d 601 (2007), to argue that Ellington was required to file a petition for a major modification and that the trial court was required to find adequate cause based thereon to modify the parenting plan as it did. But *M.F.* is distinguishable.

There, a step-father petitioned for de facto parentage of a child, and sought residential time based solely on *Parentage of L.B.*, 155 Wn.2d 679, 683, 122 P.3d 161 (2005), a case involving de facto parentage of a child born through artificial insemination. *M.F.*, 141 Wn. App. at 562-63. The *M.F.* court held that *L.B.* did not create a common law cause of action for every step-parent to request de facto parentage and further held that even if the step-father could

13

establish de facto parentage, he still must meet the adequate cause threshold to modify the existing parenting plan. 141 Wn. App. at 570-71. The *M.F.* court held that the trial court there abused its discretion when it failed to make *any* of the statutorily required findings for adequate cause and *neither* party filed a petition to modify the existing parenting plan. 141 Wn. App. at 571-72.

That is not the case here. Floramo filed a petition for a major modification. The trial court found adequate cause to proceed to trial. The trial court entered findings as mandated by statute. Thus, the trial court properly exercised its discretion when it entered the modified parenting plan after adducing facts at trial that supported findings against Floramo under RCW 26.09.191.

B.      *Notice*

Next, Floramo cites *In re Custody of Halls*, 126 Wn. App. 599, 602, 109 P.3d 15 (2005), to argue that he was denied substantive and procedural due process when the trial court modified the final parenting plan without a pending petition for modification, adequate cause hearing, or adequate consideration of the statutory criteria to modify a parenting plan. But *Halls* is inapplicable here; thus, we disagree.

In *Halls*, we held the trial court violated due process not because a party failed to petition for a modification, but because the trial court failed to provide the indigent mother with counsel when she was facing jail time for a contempt finding related to violating the parenting plan. 126 Wn. App. at 610. Moreover, in *Halls*, the father filed only a motion for contempt that did not comply with any requirement of RCW 26.09.270. 126 Wn. App. at 608. He did not ask for a modification of the parenting plan, he provided no basis for an adequate cause finding (and the

court did not find adequate cause); and he gave the mother no notice that he sought to modify the parenting plan. *Halls*, 126 Wn. App. at 608.

That is not what happened here. Here, Floramo had ample notice of Ellington's request to the trial court. Ellington filed a response to his petition to modify the parenting plan that included a request for restrictions against Floramo and a request that M.E. spend more residential time with Ellington. Ellington's response included a declaration that laid out her concerns and requests to the court. Unlike the father in *Halls*, this complied with the affidavit requirement in RCW 26.09.270. Moreover, unlike the father in *Halls*, Floramo *did* file a petition to modify the existing parenting plan, and the trial court found adequate cause to proceed to trial. The trial proceeded in part because of Floramo's petition; his due process rights were not violated.

C.    *Local Rules*

Floramo argues that the trial court's decision violated Pierce County local rules. Floramo argues that because the local rule on petitions to modify a parenting plan states that "petitioner(s)"—in the plural—shall obtain an order on adequate cause, the local rules anticipate that parties will present cross-petitions for modification. Pierce County Local Special Proceedings Rules (PCLSPR) 94.04(g)(3). Thus, he argues, the local rules mandate that a responding party seeking modification must obtain his or her own order on adequate cause. We disagree.

PCLSPR 94.04(g) provides, in pertinent part,

Petition to Modify Parenting Plan/Residential Schedule

> (1) How Initiated. An action for modification of a final parenting plan/residential schedule is commenced by the filing of a Summons, Petition to Change a Parenting Plan, Proposed Parenting Plan/Residential Schedule, and

Petitioner's Motion for Adequate Cause on the mandatory forms under an existing or new domestic case (type 3) filing.

. . . .

(3) Requirements. The petitioner(s) shall obtain an Order on Adequate Cause on the Commissioners' dockets on or before the court hearing date specified in the Order Setting Case Schedule or the petition will be dismissed without further notice.

Even assuming, without deciding, that the decision does violate a local rule, our Supreme Court has held that local rules cannot be inconsistent with a statute. *Harbor Enters., Inc. v. Gudjonsson*, 116 Wn.2d 283, 293, 803 P.2d 798 (1991). Local rules must not be inconsistent with rules adopted by the Supreme Court, and "[t]he same principle negates a local rule which conflicts with a statute." *Harbor Enters.*, 116 Wn.2d at 293. Here, PCLSPR 94.04(g) would conflict with the statutory requirement under RCW 26.09.187(3)(a) that the trial court must enter a parenting plan consistent with its findings under RCW 26.09.191. Accordingly, regardless of the Pierce County local rule, the trial court properly entered the parenting plan as required by statute.

D.     *Mandatory Forms*

Finally, Floramo argues that Ellington was required to file her own petition to modify the parenting plan based on the language in the mandatory form, which states,

Warning! If you want a change to the current parenting/custody order based on different reasons than listed in the other parent's (or non-parent custodian's) Petition, you must file your own Petition to Change a Parenting Plan, Residential Schedule or Custody Order (form FL Modify 601).

CP at 44. Floramo argues that under RCW 26.18.220, which mandates certain forms be used in child support enforcement cases, Ellington was required to file a petition using the official form. We disagree.

16

Turning to the plain language of RCW 26.18.220, to the extent that it applies to parenting plan disputes, it provides that "[t]he parties shall use the mandatory form for financial affidavits." RCW 26.18.220(1). It says nothing of petitions to modify parenting plans. Moreover, RCW 26.18.220(3) provides, in pertinent part, "A party's failure to use the mandatory forms or follow the format rules shall not be a reason to dismiss a case, refuse a filing, or strike a pleading."

Here, it is undisputed that Ellington did not use a mandatory form to petition for a modification to the existing parenting plan. However, in her affidavit that she attached to her response, she requested to be named the primary residential parent. The trial court was not required to dismiss Ellington's case, refuse her filing, or strike her pleading because she failed to petition the court using the mandatory form. Despite not filing her own petition using a "mandatory form," both the court and Floramo were on notice of what Ellington was requesting of the court, and the court was not required to disregard those requests.

For all these reasons, we hold that the trial court did not abuse its discretion when it considered Ellington's affidavit, modified the parenting plan, and entered the parenting plan according to the findings adduced at trial.

## IV. CONTINUANCE

Floramo argues that the trial court abused its discretion when it denied his motion for a continuance. We disagree.

We review the trial court's decision to deny a motion to continue for a manifest abuse of discretion. *In re Welfare of A.D.R.*, 185 Wn. App. 76, 85, 340 P.3d 252 (2014). The trial court abuses its discretion where it relies on unsupported facts or applies the wrong legal standard, its

decision is exercised on untenable grounds or for untenable reasons, or if the court adopts a view that no reasonable person would take. *In re Parenting & Support of S.M.L.*, 142 Wn. App. 110, 117, 173 P.3d 967 (2007). Floramo bears the burden of proving that the trial court abused its discretion. *S.M.L.*, 142 Wn. App. at 118. He cannot do so here.

Floramo filed his petition to modify in February 2021. His counsel withdrew in May. Trial was not held until August. Floramo had ample time to consult or obtain counsel. Indeed, he secured counsel two weeks after trial. Moreover, Floramo was on notice that the trial was commencing. Furthermore, Floramo appeared at trial with a binder full of exhibits that he referred to throughout the trial. From this, it is possible for a reasonable person to infer that Floramo was well prepared for trial and the trial court's decision to deny his request for a continuance was not a decision that no reasonable person would take. *In re Parenting & Support of S.M.L.*, 142 Wn. App. at 118.

Floramo cites *In re V.R.R.*, 134 Wn. App. 573, 578, 141 P.3d 85 (2006), to argue that the trial court was required to grant Floramo a continuance until he could obtain counsel. But *In re V.R.R.* was a parenting termination proceeding at which the father had the constitutional right to counsel at the hearing. *V.R.R.* at 578. Accordingly, *V.R.R.* is inapt here, where Floramo had no right to counsel, and his parental rights were not in jeopardy of being terminated. Accordingly, we hold that the trial court did not abuse its discretion when it denied Floramo's motion for continuance.

## CONCLUSION

We hold that the trial court did not abuse its discretion when it entered an order on a parenting plan that named Ellington the primary residential parent despite her not filing a petition

to modify a parenting plan on a mandatory form. After the trial court found adequate cause to modify the parenting plan based on Floramo's petition for a major modification, RCW 26.09.187 required the trial court to enter a parenting plan that aligned with its findings that Floramo should have restrictions under RCW 26.09.191. Moreover, Ellington made her request to the court plain in an affidavit attached to her response to Floramo's motion, and Floramo and the court had ample notice of her requests to the court. We further hold that the trial court did not abuse its discretion when it denied Floramo's motion for a continuance. Accordingly, we affirm.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Worswick, P. J.

We concur:

Lee, J.

Price, J.